LAURA BLOOD and NORMAN W. BLOOD, her husband, *Appellants,* v. MARTHA B. HUNT and J. E. HUNT, *Appellees.*

Division B.

Opinion filed April 16, 1929.

Petition for rehearing denied May 18, 1929.

552

554

556

*Touchton & Dinsmore,* for Appellants;

*Huffaker & Edwards,* for Appellees.

WHITFIELD, P. J.—The bill of complaint herein brought July 19, 1927, by Martha B. Hunt and J. E. Hunt against Laura Blood and Norman W. Blood, her husband, and D. S. Story and Eloise N. Story, his wife, alleges in substance that complainants conveyed to said Laura Blood, a married woman, described lands, which was the separate statutory property of said Martha B. Hunt, a married woman; that as a part of the consideration for said conveyance, Laura Blood, joined by her husband, on December 16, 1925, executed their two promissory notes each for $5,000.00, payable on or before one and two years after date respectively with interest at 8% per annum, payable semiannually, "and upon the same day and date and in order to secure the payment of the said notes executed and delivered to complainants a purchase money mortgage upon said premises." "That the first of said promissory notes matured and became due and payable December 16, 1926, and that the defendants have failed and refused to pay the said note and the interest that has accumulated thereon and that they have likewise failed and refused to pay the interest that has accrued on the second of said promissory notes. That there is now due complainants the principal sum of Five Thousand ($5,000.00) Dollars by virtue of the maturity of the first of said promissory notes, together with all interest that has accrued on both of said notes since the last payment of interest thereon; that the said notes represent a part of the purchase price of the said premises aforesaid and that the said Laura Blood purchased said premises to be added to and become a part of her separate property and that same became and remains a part of her separate statutory property, and that the said notes and mortgage were executed and delivered by the said Laura Blood for the benefit of her separate statutory property and as a part

of the purchase price of the said property; that the said Laura Blood is seized and possessed of other described real property in the County of Polk and State of Florida, the said property being her separate statutory property, to-wit: (description stated); that in addition to owning the above mentioned and described real property the defendant, Laura Blood, is the owner of the following personal property, constituting a part of her separate statutory estate, to-wit: (description stated) including a mortgage of the defendants, D. S. Story and Eloise N. Story, in favor of the said Laura Blood.''

The prayer is for an accounting to ascertain the amount due the complainants to include a reasonable attorney fee, and ''that the amount of such indebtedness be charged upon the separate statutory property, real and personal of the defendant, Laura Blood, hereinbefore described, and that the said property, or so much thereof as shall be necessary, shall be sold by and under the direction of this honorable Court in satisfaction of the said decree, or that the rents, issues and profits of such property be sequestrated for the payment of said indebtedness, and that pending the final decree the defendants, D. S. Story, and Eloise N. Story, be enjoined from paying to the defendants, Laura Blood and Norman W. Blood, or to either, any part of the said mortgage indebtedness due from them to the said defendants; and that complainant may have such other and further relief in the premises as the nature of the case may require.'' The two notes and the mortgage are made a part of the bill of complaint.

Each of the notes contains the following: ''Should this note be collected by legal process or by an attorney, we will pay all cost of the same and a reasonable attorney's fee.'' The mortgage contains a similar provision as to attorney fees.

Each note is signed Laura Blood and Norman W. Blood. The mortgage was executed by Laura Blood and Norman W. Blood, and contains an accelerating clause maturing the entire debt upon a default in the mortgagors' covenants.

A general demurrer to the bill of complaint interposed by Laura Blood and Norman W. Blood was overruled and they appealed.

Even if this were a case in which the Constitution authorizes the married woman's separate real and personal property to be charged in equity and sold for the price of property purchased by her, and if the allegations of the bill of complaint be sufficient for the case, the Constitution does not provide for accelerating the maturity of purchase money payments not yet due, or for attorney fees in the suit. The constitutional provision, Section 2, Article XI, does not operate to supersede or to supplement the right to foreclose mortgage liens given by married women upon their separate property as authorized by the statute; nor does such organic provision operate to enforce the payment of promissory notes of married women that are secured by mortgage, or to secure the payment of any notes *as such*. The organic section authorizes the separate property of a married woman to be charged in equity and sold, or the uses, rents and profits thereof to be sequestrated, for the payment of amounts due by her in any one of the five specified classes of cases, each class being definitely stated in the section of the Constitution.

Complainants below seek to charge in equity the separate real and personal property of a married woman for the price of property purchased by her, claiming that right by virtue of Section 2 of Article XI of the State Constitution of 1885. That claim of right is challenged, and the question presented requires a consideration of laws and proceedings antedating the Constitution of 1885.

At common law a husband had a freehold interest in the lands of the wife during the coverture and his interest in such lands could be conveyed by him or subjected to his debts; the husband has during the coverture the right to the possession and control of the wife's real property and the right to the rents and profits thereof. Mayre v. Root, 27 Fla. 453, text 459, 8 So. R. 636; see 30 C. J. 526 et seq.; Tyson v. Mattair, 8 Fla. 107; 13 R. C. L., p. 1046 et seq.

At common law all personal property belonging to the wife at her marriage, or acquired by her afterward, when reduced to possession, becomes the property of the husband by reason of the marital relation, unless the property is the separate estate of the wife or unless the matter is controlled by a marriage agreement. See 30 C. J. 530 et seq.; 13 R. C. L., p. 1051 et seq.; Alston v. Rawls, 13 Fla. 117.

Under the civil law of Spain that was in force in the provinces of East and West Florida at the time of the cession of such provinces to the United States in 1819-21, married women in the provinces held their own property separate from their husbands. Property owned by women at the time of their marriage remained their own. Property acquired by married women during coverture "by lucrative cause or title," viz: by intentance or donation, remained their own. Property acquired during the coverture "by onerous cause or title," viz: by purchase or for value paid, was held in *ganancial* right by husband and wife subject to the right of partition, so that the wife could hold her part separate from her husband. MaGee v. Doe, 9 Fla., 392, text 398; McHardy v. McHardy, 7 Fla. 301; 27 C. J. 1107; 31 C. J. 20, 22; 21 Cyc. 1655; Civil Law of Spain and Mexico by Schmidt, Book 1, Title 1, Chapters 3 and 4; 1 White's New Recopilacion, p. 60 et seq.; Commodore Point Term. Co. v. Hudnall, 283 Fed. 150; 3 Fed. (2nd) 841.

When the Spanish provinces of East and West Florida were transferred to the United States in July, 1821,[*] pursuant to the treaty of cession dated February 22, 1819, and proclaimed as ratified February 22, 1821, the civil law of Spain was in force in the provinces. But upon the transfer of the possession of the ceded province by Spain to the United States, the laws of the latter country became operative throughout the ceded territory. A. L. & D. Co. v. McRae, 86 Fla. 393, 448, 98 So. R. 505; p. 4762, Comp. Gen. Laws Florida, 1927.

While the law of the territories of the United States may in general be composed of applicable principles of the common law where such principles are not inconsistent with the organic and statutory laws of such territories or of the United States, yet in order to avoid confusion and hardships that would arise from a sudden change of laws affecting personal and property rights, some rights acquired according to the civil law that was in force in East and West Florida at the time of the cession to the United States, were recognized or validated in the ceded territory by laws enacted or by authority exercised under the United States. See Proclamation of Andrew Jackson, Military Governor of

---

[*] Pursuant to authority conferred by President James Monroe, under an Act of Congress of March 3, 1821, Major General Andrew Jackson, who had been appointed Governor of East and West Florida, upon the cession from Spain, designated Col. Robert Butler to receive East Florida from Spain, which was done by appropriate ceremonies and proclamation on July 10, 1821, at St. Augustine, Florida. On July 17, 1821, Governor Andrew Jackson, with due formality received West Florida from Spain, at Pensacola, Florida, and upon an exchange of flags, made due proclamation "that the government heretofore exercised over the said provinces (East and West Florida) under the authority of Spain, had ceased, and that that of the United States of America is established over the same."—Compiled General Laws of Florida, 1927, page 4734 of multiple edition, page — of the single volume edition.

East and West Florida, dated July 17, 1821; p. XIV, Laws of Florida 1823-1825; p. 4841 et seq., Comp. Gen. Laws Florida 1927, p. 84 et seq., Compact Edition. See also Sec. 6, Art. XVI, Constitution of 1838-9; Sec. 5, Art. XV, Constitution 1861; Sec. 6, Art. XVI, Constitution 1865.

Among the provisions of law recognizing or validating rights acquired under the civil law in force in the ceded provinces, are those relating to the property right of married women and their power to own and convey or mortgage their separate property as such rights existed under the civil law in force in the Spanish provinces of East and West Florida when such provinces were ceded to the United States by treaty dated February 22, 1819, and made effective in July, 1821. See Act December 23, 1824, and Act February 4, 1835, herein set out. See also Act to legalize conveyances approved June 24, 1823.

By a territorial Act of November 6, 1829, the common law of England was expressly declared to be in force in the territory of Florida and that provision has since remained in force. Section 1, p. 21, Thompson's Digest; Section 7, p. 708, McClellan's Digest; Section 59, Revised Statutes of 1892; Section 59, General Statutes of 1906; Section 71, Revised General Statutes 1920; Section 87, Compiled General Laws 1927, viz:

"The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the fourth day of July, 1776, are hereby declared to be of force in this State; provided the said statutes and common law be not inconsistent with the Constitution and laws of the United States and the Acts of the Legislature of this State." See Section 6, Art. XVI, Constitution of 1838-9.

The third session of the Legislative Council of the Territory of Florida was held at Tallahassee in 1824-5 (the first

session having been held at Pensacola in 1822, and the second session at St. Augustine in 1823). See Comp. Gen. Laws of Florida, 1927, Vol. 5, p. 4737, multiple edition, p. 5, single volume edition. By a legislative Act "to secure the rights of husband and wife, derived previous to the cession of the Provinces of Florida to the United States," approved December 23, 1824, it was enacted that:

"WHEREAS, some doubts have been entertained as to the effect and operation of the introduction of the common law of England upon the separate rights of husband and wife under the laws of the provinces of East and West Florida upon marriages, solemnized before the change of government, to obviate any doubts in future,

*Be It Enacted by the Governor and Legislative Council of the Territory of Florida,* That all the rights and privileges of husband and wife, established or derived by marriage under the civil laws of Spain, while this territory was under the jurisdiction of that government, shall be held, possessed, and exercised by the husband and wife respectively in this territory, and each shall be permitted to sell, succeed to, dispose of, and convey by sale, devise, or will, their goods, chattels, lands and tenements, in the same manner as they could or might have done under the laws of Spain, observing only the formalities of conveyance required by any other laws established, or which may hereafter be established in this territory." Section 1, p. 220, Thompson's Digest; Section 2, p. 754, McClellan's Digest; Section 2069, Revised Statutes 1892; Section 2587, General Laws 1806; Section 3946, Revised General Statutes 1920; Section 5865, Compiled General Laws 1927; Duval's Compilation, page 45.

Before the formation of the Constitution of 1838-9,* under which on March 3, 1845, Florida was admitted into the Union as a State, the Territorial Legislative Council enacted Chapter 861, approved February 4, 1835, which is as follows:

"Chapter 861 (No. XXXIX) An Act to Enable Married Women to Convey Their Real Estate of Inheritance.

Section 1. Be It Enacted by the Governor and Legislative Council of the Territory of Florida, That any married woman owning real estate of inheritance in this Territory, may sell, convey, transfer or mortgage the same, or any part thereof, in the same manner as she might do if she were sole and unmarried: Provided, the husband of said married woman may join in such sale, conveyance, transfer, or mortgage, and the same be made and authenticated in the manner prescribed by the several acts in force, regulating conveyances of real estate, and the recording and authenticating of same; and provided also, that such married woman shall acknowledge on a separate or private examination before the officer or other * * * person appointed

---

* Pursuant to an Act of the Territorial Legislative Council, approved February 2, 1838, an election was held on the second Monday in October, 1838, for members of a convention to be held on the first Monday in December, 1838, at the city of St. Joseph, to devise and adopt measures for the formation and establishment of an independent State Government, and to form and adopt a bill of rights and constitution for the same, and all needful measures preparatory to the admission of Florida into the national confederacy, page 15, Acts 1838. Fifty-six delegates were elected by counties, viz: Middle District: Leon 8, Gadsden 4, Jefferson 4, Madison 2, Hamilton 2; Eastern District: St. Johns 4, Duval 3, Columbia 3, Alachua 3, Nassau 2, Musquito 1, Hillsborough 1; Southern District: Monroe 2, Dade 1; Western District: Jackson 4, Escambia 4, Walton 2, Washington 2, Franklin 2, Calhoun 2. The convention met on Monday, December 3, 1838, "at the City of St. Joseph." Robert Raymond Reid of St.

by law to take her acknowledgment of her execution of any such sale, conveyance, transfer, or mortgage, separate and apart from her said husband, that she executed the same freely, and without any fear or compulsion of her said husband.

Sec. 2. Be it further enacted. That all sales, conveyances, transfers, or mortgages heretofore made by married women of their real estate of inheritance in this Territory, where the husbands of such married women have joined therein, shall be as valid as if the same had been conveyed by fine as at common law, which said mode of conveyance shall never be used in this Territory.

Passed January 30th, 1835.

Approved February 4th, 1835.''

This statute recognized the existence of separate real property of married women and it has been repeatedly re-enacted and is now set forth in Sections 5674, 5676, 5689, Compiled General Laws of Florida, 1927, Sections 3801, 3803, 3816, Revised General Statutes 1920, Sections 2460,

---

Johns County was chosen President of the Convention by one majority over Wm. P. Duval of Calhoun County. Duval had been Governor of the Territory of Florida 1822-1834, and Reid was afterwards Governor, 1840-1. On January 11, 1839, a Constitution was promulgated by the convention, which was ratified at an election held on the first Monday in May, 1839, and under which the State was admitted into the Union by Act of Congress approved March 3, 1845. The State government was organized June 23, 1845.

By an Act of the Territorial Legislative Council, approved February 10, 1836, page 25, Acts 1836, "The City of St. Joseph" was incorporated, covering Sections 12 and 13, T. 8 R. 11 S. & W., being on the east or main land side of St. Joseph's Bay on the Gulf Coast of Florida, then in Calhoun County, now in Gulf County, Florida. "The City of St. Joseph" attained prominence as an important gulf port; but owing to yellow fever epidemics and other disasters, the city has disappeared. Port St. Joe is north of the former site of "The City of St. Joseph."

2462, 2475, General Statutes 1906, Sections 1956, 1958, 1969, Revised Statutes 1892, Section 9, p. 755, Section 10, p. 756, McClellan's Digest, Section 2, p. 179, and Section 3, p. 180, Thompson's Digest; Duval's Compilation, p. 209. See also Chapter 3011, Acts of 1877.

An Act of the *Territorial Legislative Council,* approved March 6, 1845, contains the following:

## "No. IX.

AN ACT to secure certain rights to women.

Section 1. *Be it Enacted by the Governor and Legislative Council of the Territory of Florida,* That hereafter when any female, a citizen of this Territory, shall marry, or when any female shall marry a citizen of this Territory, the female being seized or possessed of real or personal property, her title to the same shall continue separate, independent, and beyond the control of her husband, notwithstanding her coverture and shall not be taken in execution for his debts; Provided, however, that the property of the female shall remain in the care and management of her husband.

Sec. 2. *Be it further enacted,* That married women may hereafter become seized or possessed of real and personal property during coverture, by bequest, demise, gift, purchase, or distribution; subject, however, to the restrictions, limitations, and provisions, contained in the foregoing section.

Sec. 3. *Be it further enacted,* That any married woman having separate and independent title to property, under and by virtue of this Act, shall not be entitled to sue her husband for the rent, hire, issues, proceeds or profits of said property, nor shall the husband charge for his management and care of the property of his wife.

Sec. 4. *Be it further enacted,* That the husband and wife shall join in all sales, transfers, and conveyances of the

property of the wife, and the real estate of the wife shall only be conveyed by the joint deed of the husband and wife, duly attested, authenticated, and admitted to record, according to the laws of Florida, regulating conveyances of real property.

Sec. 5. *Be it further enacted*, That the husband shall not be held or deemed liable to pay the debts of his wife, contracted prior to any marriage hereafter to be solemnized in this Territory, but the property of the wife shall be subject to such debts.''

The substance of this enactment has been continued in force in this State. See Sections 5866, 5867, 5868, 5869, Compiled General Laws 1927; Sections 3947-8-9, 50, Revised General Statutes 1920; Sections 2588-9-91, General Statutes 1906; Sections 2070-1-3, Revised Statutes 1892; Section 3 et seq., 754 McClellan's Digest; Section 2 et seq., page 221, Thompson's Digest.

The Constitution of 1838-9, under which Florida was admitted into the Union as a State * contains the following:

''The General Assembly shall declare by law what parts of the common law and what parts of the civil law, not inconsistent with the Constitution shall be in force in this State.'' Section 6, XVI; Section 1, page 21, Thompson's Digest.

---

* ''An Act to facilitate the organization of the State of Florida,'' passed by the Territorial Legislative Council, and approved by Governor Branch, March 11, 1845, states that ''Whereas, it is believed that the State of Florida has been admitted into the National Confederacy by law, at the session of Congress just terminated, under the Constitution framed at St. Joseph and ratified by the people of Florida in 1839,'' and provided for an election to choose a Governor, Representatives in Congress and members of the General Assembly. Page 9, Territorial Laws of 1845. The election was held on Monday, May 26, 1845. William D. Mosley was elected Governor, and a ''General Assembly'' consisting of seventeen Senators and forty-one members of the House were

''That all the laws or parts of laws now in force or which may be hereafter passed by the Governor and Legislative Council of the Territory of Florida, not repugnant to the provisions of this Constitution shall continue in force until, by operation of their provisions or limitations, the same shall cease to be in force, or until the General Assembly of this State shall alter or repeal the same.'' Section 1, Article XVII. See also Section 18 of Act to facilitate the organization of the State. Territorial Laws of 1845, page 9, 16; Section 5865, Comp. Gen. Laws 1927; p. 22 Thompson's Digest.

Section 6, Article XVI of the Constitution of 1838-9 appears as Section 5, Article XV of the Constitution of 1861, and as Section 6, Article XVI of the Constitution of 1865.

The Constitutions of 1838-9, 1861 and 1865 contain no provision specifically regulating the rights of married women.

---

chosen. The Legislature convened and the State government was organized June 23, 1845, that being the fourth Monday after the election as required by the Constitution of 1838-9, under which Florida was by an Act of Congress approved March 3, 1845, admitted into the Union as a State. See Vol. 5, page 4747, Comp. Gen. Laws 1927, page 13, single volume edition.

The Act of March 6, 1845, herein quoted, was passed by the Territorial Legislative Council and approved by Governor John Branch, the last Governor of the Territory of Florida. The first Act of "The General Assembly of the State of Florida," under the Constitution of 1838-9, was enacted after the organization of "The General Assembly," June 23, 1845. The Constitution of 1838-9 was put into operation June 23, 1845.

The Act of Congress admitting Florida as a State had been approved March 3, 1845, but it was not known in Tallahassee, since there was no telegraph communication with Washington; D. C., and the mail by stage had doubtless not arrived when the Act was passed.

Section 26, Article IV of the Constitution of 1868, contains the following:

"All property, both real and personal, of the wife, owned by her before marriage, or acquired afterward by gift, devise, descent or purchase, shall be her separate property, and not liable for the debts of her husband." Page 4962, Comp. Gen. Laws 1927; page 27, McClellan's Digest; Dollner v. Snow, 16 Fla. 86.

The statute under which a married woman may become a free dealer is not pertinent in this case. See Sections 5024, 5028, Comp. Gen. Laws 1927, Sections 3218-3222, Rev. Gen. Stats. 1920, Sections 1955-1959, Gen. Stats. 1906, Sections 1505-1509, Rev. Stats. 1892, pages 756-757, McClellan's Digest. See Lerch v. Barnes, 61 Fla. 672, 54 So. R. 763; Com. Bldg. Co. v. Parslow, 93 Fla. 143, 112 So. R. 378. Smith v. Smith, 18 Fla. 789; Crawford v. Feder, 34 Fla. 397, 16 So. R. 287; Walling v. The Christian Craft Groc. Co., 41 Fla. 479, 27 So. R. 46; Drake v. Marsh, 66 Fla. 598, 64 So. R. 268; Martinez v. Ward, 19 Fla. 175. As to married women's contracts to convey their separate property that may be specifically enforced, see . Section 5872, Comp. Gen. Laws 1927; Smitz v. Wright, 64 Fla. 485, 60 So. R. 225.

Another statute, Sec. 5870, Comp. Gen. Laws 1927, first enacted as Sec. 2074 of the Rev. Stats. 1892, provides, "a married woman shall have the right to bring suits or actions for or concerning her real estate, without joining her husband or next friend." Sec. 2592, Gen. Stats. 1906, Sec. 3951, Rev. Gen. Stats. 1920; Porter v. Taylor, 64 Fla. 100, 59 So. R. 400. See as to the prior rule, Smith v. Smith, 18 Fla. 789.

Sections 1 and 2, Art. XI of the Constitution of 1885 (with punctuation as in the original) are as follows:

"Section 1: All property, real and personal, of a wife

owned by her before marriage, or lawfully acquired afterward by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women.''

''Section 2. A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent.''

Section 2, Article XI provides for five distinct classes of cases in which a married woman's separate property may be charged for debts incurred by her. The remedy afforded by the section will ordinarily operate upon each case as coming within one and only one of the enumerated classes of cases. If a case more properly comes within one of the specified classes of cases, the remedy appropriate to that class only should be invoked. See Citizens Bank & Trust Co. v. Smith, filed this day.

At common law a married woman had in general no power to make contracts that would be legally binding upon her personally, and consequently at common law a promissory note made by a married woman alone is void; and a mortgage executed by a married woman and her husband upon her separate property to secure the payment *eo nomine* of a note signed by the married woman alone is a nullity. See Hodges v. Price, 18 Fla. 342. See also Lewis v. Yale, 4 Fla. 418; Dollner, Potter & Co. v. Snow, 16 Fla. 86; Eq.

B. & L. v. King, 48 Fla. 252, 37 So. R. 181. This is in general now the law in Florida, Va. Ca. Chem. Co. v. Fisher, 58 Fla. 377, 50 So. R. 504, except as to married women who are duly authorized to become free dealers under the statute, Secs. 5024-8, Comp. Gen. Laws 1927; Graham v. Tucker, 56 Fla. 307, 47 So. R. 563; Lerch v. Barnes, 61 Fla. 672, 54 So. R. 763, or except as married women's rights and liabilities are affected by Sec. 2, Art. XI, constitution of 1885; Micou v. McDonald, 55 Fla. 776, 46 So. R. 291. A promissory note duly signed by a married woman and her husband may be good as to the husband though not as to the wife. A mortgage duly executed as required by Sec. 1, Art. XI of the Constitution, Secs. 5674-6, Comp. Gen. Laws 1927, by the husband and wife upon her separate property to secure the payment of a debt due by her or by her husband may be good. Mattair v. Card, 18 Fla. 761; Cobb v. Baer, 57 Fla. 370, 49 So. R. 29; Oklawaha River Farms v. Young; 73 Fla. 159, 74 So. R. 644; Walker v. Heege, 78 Fla. 667, 83 So. R. 605; Gaulden v. Warnock; 79 Fla. 669; 84 So. R. 603; See also Bailey v. Smith 98 Fla. 303, 103 So. R. 833.

A wife's *separate estate* is an equitable estate in property the legal title to which is in some other person for her benefit. In equity such separate estate may be subjected to the payment of debts of the wife, if not restrained by the legal effect of the instrument creating the estate. Dollner v. Snow, 16 Fla. 86; 30 C. J. 795, 870; 13 R. C. L. page 1134 et seq. A wife's *separate property* in Florida is that which she holds in her own right by virtue of the Act of March 6, 1845; by Sec. 26, Art. IV, Constitution of 1868; and by Sec. 1, Art. XI Constitution 1885. See Pom. Eq. Juris. (4th Ed.) Sec. 1099 et seq.

As at common law married women could not in general make contracts that would be binding on them personally

they could not be sued at law for breach of contract, and this was the general rule recognized and applied by courts of equity both in England in 1776 and in Florida after the cession in 1821. But in proper cases courts of equity would subject the separate equitable estates of married women to debts made by or for them which they, upon equitable principles, should pay for their equitable estates. See Norton v. Turvill, 2 Peere Williams 144; 30 C. J. 870 and cases cited. Vols. 1 and 3 Pom. Eq. Juris., Sec. 52 et seq. Sec. 1098 et seq. This procedure in equity remedied in part the harshness and injustice of the common law. It enabled married women to have at least some transactions *for their own benefit,* by securing their creditors to the extent of making the separate equitable estate of married women liable for debts incurred for their benefit in such transactions.

Under the civil law of Spain which was in force in the Spanish provinces of East and West Florida when they were ceded by Spain to the United States in 1821, married women could own property and dispose of it. See 1 White's New Recompilacian, pages 61, 185. The statutes of December 23, 1824, and February 4, 1835, above quoted conferred upon married women the right to hold and dispose of their property as under the civil law of Spain; and while such statutes did not enable married women to make binding contracts, the statutes did enable married women to convey their separate property by proper procedure; and courts of equity could subject the equitable separate estates of married women to the payment of their debts incurred for their benefit or for the benefit of their own property.

This was the state of the law in Florida when by the Act of March 6, 1845, married women were specifically accorded the power to hold in their own right and by proper procedure to dispose of their separate property. This statute,

if not also the Acts of 1823 and 1835, gave to married women the legal title to their "separate property", sometimes called "statutory separate property", because it was definitely secured to married women by the Act of March 6, 1845. See also Sec. 26, Art. IV Constitution of 1868; Sec. 1, Art. XI Constitution of 1885. These statutes did not authorize married women to make contracts in general, but they were authorized to sell, convey or to mortgage their separate property, provided their husbands join in the sale, conveyance or mortgage in the manner required by the statutes. Secs. 5674, 5676, Comp. Gen. Laws 1927.

Prior to the adoption of the constitution of 1885, the *separate property,* Blumer v. Polak, 18 Fla. 707, of a married woman, as distinguished from her *equitable separate estate,* Smith v. Poythress, 2 Fla. 92, Merritt v. Jenkins, 17 Fla. 593, was subjected in equity to the payment of certain debts of hers, under general principles of equity jurisprudence. Schnable v. Betts, 23 Fla. 178, 1 So. R. 692; O'Neil v. Percival, 25 Fla. 118, 5 So. R. 809; Dollner v. Snow, 16 Fla. 86; 13 R. C. L. page 1147; Fairchild v. Knight, 18 Fla. 770. The remedy in equity was afforded because there was no remedy at law against married women who had no power at common law to make binding contracts, and the statutes of the State have not changed the common law respecting the powers in general of married women to make binding contracts. Harwood v. Root, 20 Fla. 940, 960; Va. Ca. Chem. Co. v. Fisher, 58 Fla. 377, 50 So. R. 504; Bailey v. Smith, 89 Fla. 303, 103 So. R. 833; 107 So. R. 350; McGill v. Art Stone Con. Co. 57 Fla. 498, 49 So. R. 539; Livingston v. Powers, 85 Fla. 254. 95 So. R. 622.

This remedy in equity was not available where mortgage liens upon a married woman's separate property were given in accordance with the statutes, since such liens were

enforceable by foreclosure proceedings. See Frosem v. Capo. 88 Fla. 236, 102 So. R. 158. Before the Constitution of 1885 was adopted the statutes had changed the common law, so that the property of married women would remain their separate property; though the common law disability of married women to contract generally was not changed. By statute married women could mortgage their separate property; and such mortgages being under the statutes mere liens upon the property, such liens were under the statutes enforced by foreclosure in equity. Secs. 5725, 5747, Comp. Gen. Laws 1927. But the *statutes* made no provision for subjecting in equity the *separate property* of married women for claims other than *mortgage* liens against her separate property. Courts of equity gave a remedy but the statutes did not.

When the State Constitutional Convention was held in 1885 there were statutes authorizing a married woman to execute a mortgage lien upon her separate property for money due by her, which liens could be enforced in equity by foreclosure proceedings; but there was no *statute* or organic provision authorizing the separate property of a married woman to be subjected to the payment of her debts, when no mortgage lien had been given therefor, though courts of equity, in the absence of a statute and by applying equitable principles, were then subjecting the separate property of married women to the payment of debts incurred by them for the benefit of their separate property, but for which debts no mortgage lien was given as authorized by statute.

In order to authoritatively prescribe a definite remedy against the separate property of married women (not free dealers) who have incurred debts for the benefit of their separate property but who under the law could not be sued for breach of contract, and who under the statute of 1845

and under the Constitution of 1868 and 1885, may have separate property but no power to make binding contracts for the purchase of or for the benefit of such separate property, and who have not executed mortgage liens upon such property as authorized by statute, which liens could be enforced against the mortgaged property, the Constitution of 1885, in Section 2, Article XI, specifically authorized a remedy against the separate property of married women, which remedy had not been given by the common law or by statute, and extended the remedy to some classes of cases to which perhaps the remedy had not been applied by the courts of equity, such remedy being obviously intended to be applied only to the classes of claims against married women that are designated in the Constitution and for the payment of which claims no mortgage lien had been executed as authorized by statute.

Sec. 2, Art. XI of the Constitution of 1885 affords a remedy in classes of cases formerly remediable in equity though not by virtue of any statute, and the section also apparently gives a remedy in classes of cases not theretofore covered by equitable remedies applied in this State.

The organic provision recognizes the existence in this State of separate property of a married woman under the then existing statutes and specifically provides for subjecting in equity the separate property of a married woman for amounts due by her in classes of cases that are definitely enumerated in the organic section.

The right given by the Constitution of 1885 to subject in equity the *separate property* of a married woman in the classes of cases enumerated and under the conditions stated in the Constitution, does not supersede or change the rights or liabilities of parties to mortgages executed by married women upon their *separate property* under the statute of 1835, Secs. 5674, 5676, Comp. Gen. Laws 1927, Secs. 3801, 3803, Rev. Gen. Stats. 1920.

When under the statute a married women duly mortgages designated real estate that is her separate property as security for the purchase price thereof, the mortgagee or his assignee then has the security he had chosen or accepted for the payment of the amount due, and Sec. 2, Art. XI of the Constitution does not contemplate that in addition to such mortgage security or as a substitute therefor, the mortgage holder may under the organic provision subject in in equity the property purchased or any other separate property of the married woman for the debt that is secured by the mortgage. This result clearly and inevitably follows from a consideration of Sec. 2, Art. XI of the Constitution of 1885 in connection with the statutes above quoted that had been in operation long prior to the adoption of the Constitution of 1885.

See Sec. 2, Art. XVIII, Constitution.

Sec. 2 of Art. XI of the Constitution of 1885 was not intended to supersede or to supplement the remedy by foreclosure where a married woman had in accordance with the statute given a mortgage lien upon her separate property to secure the price of property purchased by her. The organic remedy was intended to be applied where the statutes afforded no remedy against a married woman not having the power to make a binding contract for amounts due by her in relation to her separate property. The statutes do authorize a married woman to give a mortgage upon her separate property for the price of property purchased by her and also provide a remedy against her by judicial enforcement of the mortgage lien; therefore the remedy afforded by the Constitution is not applicable in such a case.

Reversed.

Strum and Buford, J. J., concur.

Terrell, C. J., and Brown, J., concur in the opinion and judgment.

Ellis, J., concurs in the conclusion.