GERTRUDE V. DURRANCE, *et vir*, v. MALLETT-BROWN COMPANY.

168 So. 829.
Division B.
Opinion Filed June 8, 1936.
Rehearing Denied June 26, 1936.

*W. W. Whitehurst,* for Appellants;

*Huffaker & Edwards,* for Appellee.

BUFORD, J.—The appeal here brings for review order of court overruling and denying complainant's motion to strike counter claim of defendant hereinafter referred to; also another order denying motion of complainant for leave to amend bill of complaint; also order denying petition for rehearing and denying plaintiff's motion to strike counter claim of the defendant, and also order of court granting the motion of defendant to strike paragraphs 2 and 6 of plaintiff's replication hereinafter referred to.

For the disposition of this case to be of material benefit, it is necessary to set forth at some length the history of the case and, as counsel for the appellee concede that the statement of the case as set forth in brief filed in behalf of the appellant is a correct statement, we adopt the same, which in substance is, as follows: The appellant, Gertrude V. Durrance, owns a tract of land consisting of approximately twenty acres located near the City of Frostproof in Polk County. She was the owner of this property on and prior to the 15th day of January, 1928. On that date there was a bearing citrus grove on the property consisting of approximately twenty acres. This is all of the property owned by the married woman. She lives in Hardee County, some considerable distance from the property. The appellee is a corporation having its principal place of business at Frostproof, Florida, and engaged in the business of caring for citrus grove property. In order to facilitate the mainte-

nance and care of her citrus grove, the appellant, Mrs. Durrance, entered into an agreement in writing with the appellee on the 15th day of January, 1928, by the terms of this agreement the appellee agreed to cultivate, fertilize, spray, prune, and do all necessary work for a period of eight years. It agreed to render to the married woman, or her representative, a statement or invoice of all work done, or material used during the preceding month, and that all charges made should be found equitable. The agreement further provided that the appellee should have a lien on the fruit from a certain grove for the period specified, and the agreement itself is made to constitute a lien on the citrus fruits for a period of eight years from the date of the agreement. It is agreed that all proceeds from the fruit should be applied to the payment of all proper charges made by the appellee against the grove for work, labor, and material until paid, and any surplus or net profits realized from the sale of the citrus fruits during the period covered by the agreement should be divided between the appellee and appellant, forty per cent. going to the appellee and sixty per cent. going to the appellant. Mrs. Durrance reserved in the agreement the right to designate the fruit broker, or shipper, through whom the fruit should be sold. It was agreed that in the case of a severe freeze, which might hinder the normal production of the grove for a period of years, such as to render it impossible for the appellee to reimburse itself for the upkeep of the grove the agreement should be extended in force for such a period of time as should be necessary to enable the appellee to reimburse itself for all expenditures for upkeep. No question is made that any freeze, or storm has occurred which would entitle the appellee to invoke this provision of the agreement.

The agreement further provided that the appellee should

pay all taxes upon the property during the period of the agreement which should be considered a charge the same as other charges for labor, material, etc. The agreement then provided that the appellee should not acquire any statutory lien against the property for work done, labor performed, or material furnished for the purposes above mentioned, "having accepted a lien upon the citrus fruits grown upon the said lands as security for the repayment of any moneys advanced pursuant to this contract and that it will not undertake to file any notice of lien, or have the same recorded nor at any time bring any suit, or suits for the purpose of imposing a lien upon the said property, nor claim any statutory lien thereon." This provision in the agreement refers to the property itself as distinguished from the citrus fruits grown during the period covered by the agreement, and to which citrus fruits the lien of the appellee for labor and materials and moneys paid out is expressly limited. The appellee took possession and control of this citrus grove under the agreement on January 15, 1928, and continued in the possession and custody of the property, marketing all citrus fruits therefrom, for a period of seven years and up until the filing of the bill of complaint in this case on April 17, 1935. On April 17, 1935, the appellant filed her bill of complaint in which she alleges that pursuant to this agreement the appellee has been in possession of her property for seven years during which time it has exercised all the rights, and privileges conferred by the agreement; that it wholly failed to furnish her with monthly statements, or invoices covering claims for labor and material as required by the agreement, or to inform her of the charges which had been made against her from month to month and that in addition thereto that it had wholly ignored the provision of the agreement which permitted the appellant to designate

a broker through whom the citrus fruits should be marketed, but on the contrary had assumed to and did market the citrus fruits without affording the appellant to designate the shipper, or broker. No indebtedness existed against the property at the time it was taken over by the appellee, but the appellant alleged in her bill that during the seven years period of time over which the appellee has had the control of the property it has not only failed to pay her any returns whatever from her citrus grove, but that it had taken and appropriated to its own use all of the proceeds which had been received by it throughout that period of time and in addition thereto asserted, at the time of the filing of the bill, that there was due it more than $3,000.00 for labor and materials which had been furnished and used upon the property. In addition to the breaches of the agreement alleged, it is also alleged that the agreement in writing is void and unenforceable as such and appellant seeks to terminate the further possession and control of the appellee over her property under this agreement in writing. At the time of the filing of the bill it is alleged that there was a valuable crop of citrus fruits on the trees, worth approximately $2,-000.00, and the court was asked to take control of this crop of citrus fruits through a receiver and preserve the proceeds, pending a determination of the respective rights of the parties. In her bill of complaint the appellant offers to pay from the proceeds available from the citrus fruits such sum, or sums of money as shall be found to be due the appellee for expenses reasonably incurred for work, fertilizer, and other materials used in the production of the citrus fruit on the property as well as taxes and other charges which the court shall find to be reasonably incurred in the production of the citrus fruits upon the premises. A receiver was appointed pursuant to this bill. The appellee

filed a petition alleging that a sale of the citrus fruits had been made prior to the appointment of a Receiver for the sum of $2.00 per box. Appellant agreed that this sale be confirmed and the Receiver discharged. The Court entered an order confirming the sale of the citrus fruits which had been made by the appellee to L. Maxcy, Inc., for $2.00 per standard field box. The Receiver was discharged and the appellee was directed to proceed as rapidly as possible with the consummation of the contract of sale and to deliver the citrus fruits to the purchaser and that the proceeds therefrom should be paid into the registry of the court. On April 25th, 1935, the appellee filed its answer and counter claim. By its answer the appellee admitted the provisions of the written agreement as set out in detail in complainant's bill. It admitted that it has annually marketed the citrus fruits since January 15, 1928; that it has not rendered monthly statements during the period of time as required by the agreement. It admits that on June 30, 1934, the expense of the upkeep of the citrus grove had accumulated in the sum of $3,192.16, and that said amount of expense is in excess of the net proceeds received for citrus fruits marketed, and that the appellee has retained all of the proceeds from the grove during the period of the contract. The appellee denies that the agreement is void, but allgees that it was entered into by the Appellant for the benefit of her separate property and for agricultural, or other labor bestowed upon her separate property with her knowledge and consent; "That the appellant intended by her contract to charge her said separate statutory property with the cost and expense of the upkeep and maintenance of her said grove"; the appellee denies that it has failed and neglected to carry out "the spirit and purpose for which said agreement was entered into." The appellee proceeds in its an-

swer to set up its counter claim against the appellant, Mrs. Durrance, by alleging that the premises in question constitute the separate statutory property of the appellant; that she is not a free dealer, and that the agreement in writing, a copy of which is annexed to the bill of complaint, and also to the answer, "was made for the benefit of the said separate statutory property of the appellant and for improvements to be made upon her said property and for agricultural and other labor to be bestowed upon her said property by the appellee." It is alleged that the appellee has, since the making of the contract, substantially complied with the same and has cultivated, fertilized, sprayed, pruned and performed all necessary work for the proper maintenance and upkeep of the said grove and that its charges have been fair and equitable; that it has marketed the citrus fruits on the best terms and attaches to the answer an itemized statement of the expense and charges the appellee has been put to in maintaining the grove; that in accordance with this statement there is due from the appellant married woman, to the appellee, a balance of $3,093.43, together with legal interest thereon and that the appellee is entitled to a decree of the court that the said property be charged in equity and sold for the amount of said indebtedness, or have a sequestration of the issues, rents and profits. It is prayed that after applying the proceeds of the crop of citrus fruits then upon the trees that the court determine the balance still remaining due and enter a decree that the property itself be sold and the proceeds applied to the payment of said balance, or that the fruit crop grown upon said premises be sequestrated and applied to the payment of the balance found to be due.

On May 21, 1935, the appellant married woman filed her motion to strike the counter claim of the appellee, for the reason that the matter set forth in said counter claim does

not constitute such a claim as authorized in a court of equity to charge the same against the property of a married woman under the Constitution and laws of the State of Florida; that the matters set forth in the counter claim constitute no cause of action against the appellant, a married woman; that the counter claim does not set forth any facts, or circumstances under which a court of equity can charge the lands described in the bill of complaint as the property of a married woman.

The court on June 26, 1935, entered an order overruling and denying the appellant's motion to strike. Petition for rehearing was filed in which the court was asked to reconsider its order entered on June 26th denying appellant's motion to strike. On October 5th, 1935, the court entered an order denying the petition for rehearing. On August 1, 1935, appellant moved for leave to amend her bill of complaint. At a hearing on the motion to strike the counter claim the question was raised as to the bill of complaint showing a sufficient willingness on the part of appellant to do equity. In order to meet any criticism that might be directed to the bill for failure to offer to do equity and to supplement the offer made in the original bill, the appellants by their motion sought leave to amend the bill to offer to have all proceeds from the citrus fruits then growing, or to be grown thereafter, within the period covered by the agreement in writing applied to the payment of the amount, if any, which the court should find to be due the appellee and thereby offering to have the court, by appropriate proceeding, preserve all of the proeceds which should become available during the period covered by the written agreement. On August 23, 1935, the court by its order overruled and denied the motion for leave to amend. On August 28, 1935, the appellant filed her replication to the counter claim of the

appellee. By this replication the appellant set up the express terms of the written agreement which limits the rights of the appellee to the proceeds of the citrus fruits during the period covered by the agreement and sets up the provision which limits the rights to any lien or to charge any property of the married woman, to the citrus fruits grown upon the property during the period covered by the agreement. It is alleged that the crop of citrus fruits located upon the premises at the time of the institution of the suit and which were alleged by the appellee to have been sold by it to L. Maxcy, Inc., had been wholly lost as a result of its own neglect; that the court had by its order specifically directed appellee to consummate the sale of this fruit and deliver it and collect the proceeds and put this into court and that it had wholly failed and neglected to do so and permitted the crop to become lost. Appellant also replied that the appellee had not, at any time subsequent to the alleged performance of labor, or furnishing of material, or after the making of the contract in writing between the appellant and appellee, filed in the office of the Clerk of the Circuit Court of Polk County, where the land was situated, and have recorded in the record of liens, a notice of the performance of such labor, or furnishing of such material for the construction of improvements upon the property. The appellee on August 31, 1935, moved to strike the second paragraph of the replication of the appellant to the appellee's counter claim.

The second paragraph of the replication was as follows: "The complainant's answer paragraph one admits that the lands described in the bill of complaint constitute the separate statutory property of the complainant, Gertrude V. Durrance, a married woman, and that said complainant is not a free dealer, and complainants say that the contract, copy of

which is attached to the bill of complaint, was made for the mutual benefit of the parties hereto and to enable the complainant, Gertrude V. Durrance, a married woman, to have her statutory separate property properly maintained for the consideration and upon the express terms set forth therein, and denies that said contract contemplated, or authorized the construction of improvements upon her said property, and that the said agreement did provide for the performance of agricultural and other labor upon her property, but that the compensation to be received by the defendant in the performance of such labor and the furnishing of such material was and is expressly fixed and determined by the said contract and was and is limited wholly to the proceeds of the citrus fruits grown by the said defendant upon the said property within the period of eight years from the date of the said agreement, which said proceeds complainant is willing and hereby offers to apply as far as necessary to the payment of any sum due the defendant and which may be determined to be due upon an accounting in this cause."

The appellee further moved to strike paragraph 6 of the appellant's replication to the answer which was as follows:

"Complainants further answering the said counter claim say that the defendant in this case did not and has not, nor has anybody for, or on its behalf at any time subsequent to the alleged performance of labor, or the alleged furnishing of material, or after the making of the contract in writing between the defendant and complainant herein, a copy of which is annexed to and made a part of the answer of the defendant in this case, filed in the office of the Clerk of the Circuit Court of the county wherein said lands and premises are situated which are the subject matter of the claim of the defendant under its counter claim and have recorded in the record of liens required to be kept by the Clerk in

said county in which the lands are located, a notice of the performance of such labor, or of the furnishing of such material, or of the contract for the construction of improvements as required by law, and that no such notice of lien as aforesaid so required by law to be filed to entitle the defendant to assert in this court a counter claim to a charge upon the statutory separate property of the complainant, a married woman, was ever filed, either prior to, or after the filing of the bill of complaint, nor at any time within three months after the entire performance of the labor, or the entire furnishing of the material alleged to have been performed and furnished by the said counter claim, nor has any such notice ever been filed, or recorded, and complainant says that under the provisions of Section 2, Article II, of the Constitution of Florida the filing and recording of such notice as provided by the law is mandatory."

The grounds upon which it was sought to have paragraph 2 stricken were as follows:

"1. The said paragraph constitutes no defense to the case made by the answer.

"2. The matters alleged in said paragraph are inconsistent with and repugnant to the case made by the bill and answer.

"3. The said paragraph sets up the same things by way of defense that the plaintiff has attempted to set up by way of amendment to the bill, which the Court has denied the plaintiff the right to do."

While the grounds upon which motion to strike paragraph 6 were as follows:

"1. The said paragraph constitutes no defense to the case made by the answer.

"2. The matters and things alleged in said paragraph

are *res judicata* in this case since the entry of the order denying the motion to dismiss the counter claim.

"3.    There is no statute requiring the filing and recording of a notice of a lien in cases of the character of the one now before the Court."

The motion was granted by the Chancellor without stating which of the grounds were deemed sufficient.

Appeal was entered, as hereinabove stated.

It is not necessary to quote the lease agreement between the parties because we have hereinbefore stated the substance thereof.

Section 2, Article XI, of the Constitution is as follows:

"A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent."

We construed this in the case of Citizens Bank & Trust Co. v. Smith, 97 Fla. 601, 121 So. 900, and also in Blood v. Hunt, 97 Fla. 551, 121 So. 886.    In Citizens Bank & Trust Co. v. Smith, *supra,* we said:

"The intent of Section 2, Article XI, Constitution of 1885, is not to authorize married women to contract generally with reference to their separate property, but to define a remedy in equity against the separate real and personal property of a married woman for stated debts or obligations incurred by her or for the benefit of her separate property in the manner designated in the specifically stated five classes

of cases where the organic or statute law of the State had not afforded such remedy (though courts of equity had given similar remedies), and where mortgage liens to secure such debts or obligations are not given as authorized by organic or statutory provisions."

And we also said, in the same case:

"This section provides for five distinct classes of cases in which a married woman's separate property may be charged in equity for debts incurred by her. The language was carefully chosen and a field of operation should be accorded to each of the five designated classes of cases. It is not likely that any particular obligation will fall within more than one of the designated classifications; so that the remedy will ordinarily operate upon each case as coming within one and only one of the enumerated classes of cases. If a case more properly comes within one of the specified classes of cases, the remedy that is appropriate to that class only should be invoked."

In the case of Blood v. Hunt, *supra,* we gave utterance to like expression.

The counter claim in the instant case sought to bring it within at least three of the classes available under the Constitution: *First,* that the contract entered into by the parties was made for the benefit of the separate statutory property of the complainant; *Second,* the contract was made for improvements to be made upon her separate property, and *Third,* for agricultural and other labor to be bestowed upon her separate property.

It is clearly apparent that whatever right the defendant had to charge the property of the complainant in equity must rest entirely upon the agreement in writing which was pleaded in this case. It is also apparent that the claim asserted is for agricultural and other labor bestowed upon

the property and for fertilizer and other material alleged to have been used for the benefit of the property and for moneys alleged to have been paid out in the discharge of the taxes due. Whatever claim the defendant had against the complainant was under the terms of the contract as the same had been executed and performed. The defendant admitted that it took possession of the complainant's property in January, 1928; that it did so under the agreement pleaded and that any obligation which accrued against the property of the complainant accrued under the terms of that agreement.

The agreement, as hereinbefore stated, was for a period of eight years and after it had been in force, effect and under execution for a period of seven years the complainant sought to bring the agreement to an end and in effect to cancel the agreement, because the defendant had not complied with the terms of the agreement in that it failed to make the accountings which were required by the agreement and because it appeared that the defendant was claiming an indebtedness against the complainant in excess of what would be realized by the defendant from the proceeds of the sale of complainant's fruit under the written agreement.

The section of the Constitution above referred to provides two remedies against a married woman's separate real or personal property. One is that the separate property may be charged in equity and sold for money or thing due upon any agreement made by her in writing for the benefit of her separate property. The other is that the uses, rents and profits thereof may be sequestrated for money or thing due upon an agreement made by her in writing for the benefit of her separate property. It will be noted that the agreement specifically provides, as follows:

"IT IS EXPRESSLY UNDERSTOOD that MALLETT-BROWN COMPANY shall 'not acquire any statutory lien against the above described property for work done, labor performed or materials furnished for the purposes above mentioned, having accepted a lien upon the citrus fruits grown upon the said lands as security for the repayment of any moneys advanced pursuant to this contract, and that it will not undertake to file any notice of lien, or have the same recorded, nor at any time bring any suit or suits for the purpose of imposing a lien upon the said property, nor claim any statutory lien thereof.' "

We hold that by entering into the agreement with the married woman, which agreement is pleaded in this case by both parties, that the defendant, appellee herein, waived its right to charge in equity or sell the separate real property of the married woman for money or thing which might become due under the agreement and by the terms of that agreement limited its remedy to that of sequestrating the uses, rents and profits of the property for the money or thing due to it under the terms of the agreement, and, having so waived its right to subject the real property in equity, and, having limted its right to sequester the uses, rents and profits, and, having operated under the terms of that agreement for a period of seven years, during which time its expenditures were greater than its revenues from the property, it can only look to the fruit crop to which it had voluntarily limited its remedy for the payment of the deficiency. This is in line with the opinions and judgments in the cases of Citizens Bank & Trust Co. v. Smith, *supra;* Blood v. Hunt, *supra;* Deno, *et al.,* v. Smith, 103 Fla. 282, 137 So. 248; Smith, *et al.,* v. Chapman, 116 Fla. 576, 156 So. 544.

The motion to strike paragraphs 2 and 6 of the replication and counter claim presents the question of the right of

the defendant to charge the real estate separate property of the married woman with the amount alleged to be due to it for labor performed and material furnished under provisions of the written agreement. The same question was presented on the petition for rehearing which was denied.

It is contended that the married woman in this case seeks to have the benefits of her written agreement for the benefit of her separate property, but renounce the burdens incident thereto. Such position is not tenable. She does not seek to renounce any burden imposed by the agreement in writing. She has offered to meet the full burden by having let appellee take all the benefits of the agreement for seven years and tendering all that the agreement required for the eighth and last year in which the agreement was to be effective. What she seeks to do is to prevent appellee from disregarding its specific agreement to look to the citrus crop for its only remuneration and to have no lien or claim on her separate real property.

Without a written agreement appellee could have no lien or claim to be satisfied by the subjecting of the married woman's separate property. Under the very clear terms of the written agreement it was agreed that it should "not acquire any statutory lien against the above described property for work done, labor performed or materials furnished for the purposes above mentioned, having accepted a lien upon the citrus fruits grown upon the said lands as security for the repayment of any moneys advanced pursuant to this contract, and that it will not undertake to file any notice of lien, or have the same recorded, nor at any time bring any suit or suits for the purpose of imposing a lien upon the said property, nor claim any statutory lien thereon."

That agreement contemplated the furnishing of just what was furnished in the manner it was furnished and the ap-

pellee cannot be heard in a court of equity to repudiate its agreement under which the parties have acted for a period of seven years and when it finds that the transaction has proved unprofitable by claiming that remedy which, by the agreement, it specifically agreed it should not have or claim.

The effect of overruling the motions to strike was to hold that the defendant was entitled to charge the amount claimed against the real estate separate property of the married woman and sell the same for the satisfaction of that claim, disregarding the fact that the written agreement clearly shows that it was the intent and understanding of the parties that the defendant should not acquire any lien or claim against the real estate either for work done, labor performed or materials furnished, or for any other advancements made under the terms of that agreement.

While equity will assume jurisdiction to charge and sell the separate property of a married woman as contemplated by the provisions of Sec. 2, Article XI, of the Constitution, equity should not and will not countenance that course when by definite and specific agreement the advances have been made with a positive and unambiguous understanding evidenced by an instrument in writing that no lien upon such separate property shall be claimed or held by reason of such advances being made.

For the reasons stated, the orders appealed from should be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

It is so ordered.

Reversed and remanded.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.