THOMAS, Justice.
On 3 April 1964 Exerdell Martin, wife of Albert C. Martin, borrowed $1850 from the appellants to discharge a note and mortgage held by one William Lay encumbering real property owned by the wife. She executed a note evidencing the loan and signed the instrument “Exerdell B. Martin, a single woman”. As security for the note she executed and delivered to the Smiths a mortgage which, too, described her as “a single woman”. She wasn’t single at all, having been continuously married to Albert for approximately 17 years. Moreover, it appears from the record that the money Exerdell received from the Smiths was used to pay a first mortgage to Lay, and closing costs including an abstract of title,.counsel fees, taxes, recording charges and the like totaling $1671.64. The balance of $178.36 was paid to Exerdell.
*17 When Exerdell failed to make any payments on the note, or mortgage, by 2 September 1964, although the first installment matured 1 June of that year the Smiths filed suit to foreclose. Then here came Albert with a petition to intervene proclaiming that at all .relevant times he had been the husband of Exerdell and that he should he allowed to intervene to protect “his interest” in the encumbered property.
On the same day Exerdell filed her answer admitting most of the salient features of the complaint but asserting that she was married all along and that she had told the mortgage broker, United Mortgage Company, she was married and “that the said agents, [sic] United Mortgage Company, did request and procure her signature before the words, ‘a single woman’, by fraud and deceit in that they represented that the words, ‘a single woman’, would be stricken and deleted from the mortgage and mortgage note.” Exerdell swore before a notary public that the statements in the answer were true. The record shows that a copy of the pleading was mailed to counsel for appellants by Sheldon R. Rosenthal who appears in this court as attorney for Exerdell and her husband.
Later the plaintiffs sought an order of the court to amend the complaint to include a prayer that the court declare in the alternative that the debt was an equitable mortgage or an equitable lien on the property. This motion was denied, and the court granted the defendants’ motion for summary decree.
The chancellor faithfully recited the record establishing the duplicity of Exerdell in the transaction by which money was extracted from the appellants for her benefit. He rejected the motion to amend the complaint so that an equitable lien could be decreed and concluded that in strict observance of decisions of this court on this subject he could only hold that the mortgage was void because the husband did not j oin in its execution.
Here we pause on the way to a solution of the crucial jurisdictional problem, to say that notwithstanding appellees’ contention in their brief that the “decree appealed from did not pass upon the validity of Section 693.01 * * * and Section 708.08, Florida Statutes [F.S.A.], but merely applied the existing law to the facts,” we have a diametrically opposite view because of the language in the decree: “The Court specifically passes upon and rej ects the attacks on the constitutionality of Sections 693.01 [sic], F.S. and Section 708.08, F.S.” To us that was sufficient to vest in this court jurisdiction of the case under Section 4 of Article V of the Constitution, F.S.A. Without making an excursion into semasiology we observe simply that passing upon and rejecting attacks on the validity of an act necessarily involved determination of that validity.
At a glance it would appear that the first provision of Section 693.01 securing to a married woman the right to convey and mortgage her separate real property was neutralized by the later provision that she could do so if her husband joined in the instrument, a subject on which we animadverted in Miller v. Phillips et vir, 157 Fla. 175, 25 So.2d 194. But a study of the act and its purpose seems to dispel the thought. The original law was enacted by the Legislative Council of the Territory of Florida in 1835. Before that, in 1824, the Legislative Council had adopted an act intended to allay all doubts about the separate rights of husband and wife under the laws of East and West Florida springing from the introduction of the Common Law of England. This law now appears as Section 708.01, F.S.A. As said by this court in Blood v. Hunt, 97 Fla. 551, 121 So. 886, “[a]t common law a husband had a freehold interest in the lands of the wife during the coverture, and his interest in such lands could be conveyed by him or subjected to his debts.” Moreover, continued the court, the husband had “during the coverture the right to the pos *18 session and control of the-wife’s real property, and the right to the' rents and profits thereof.” So on further reflection it now seems that Section 693.01 may have served a real purpose and not have been as ineffectual as first appeared.
Section 708.08 has the same counterbalancing provision but much in the introductory provisions deals with problems unrelated to the ones facing us in this controversy and these would save it from condemnation for unconstitutionality.
We are of the opinion that no error was committed by the chancellor in declining to hold invalid either Section 693.01 or Section 708.08, because we have not been convinced of their invalidity in an entirety bejrond a reasonable doubt which is the test often applied. Taylor v. Dorsey, 155 Fla. 305,19 So.2d 876.
Now back to Exerdell and her devious transaction. We think it is obvious that what she did was morally wrong and we further think that in a court of equity it should be rectified. When the chaff is blown from the grain she is shown to have relieved her separate property of an encumbrance with the money of the Smiths. Moreover, we believe the victims of her crafty conduct can find redress in a court of equity without any violence being done to organic law.
We proceed to examine the merits of the case and in doing so we go immediately to Section 2, Article XI of the Constitution where we find that “[a] married woman’s separate real * * * property may be charged in equity and sold * * * for money * ** * due upon any agreement made by her in writing for the benefit of her separate property * * This course attempted to be pursued by appellants seems • particularly appropriate for a note and mortgage easily fall within the definition of “agreement * * * in writing for the benefit of her separate property.”
Plainly the property of Exerdell has been benefited by the money secured from the Smiths for with it she discharged an outstanding mortgage on it. Her land should be held responsible for the debt even though the. mortgage and note were, because of her connivance, defectively executed. To hold these instruments constituted an “agreement made by her in writing for the benefit of her separate property,” to quote the language of Section 2, Article XI, would be no more strained than a holding that if execution of a mortgage to secure the purchase price is faulty still the land may be .subjected to the debt, as we held in Highland Crate Cooperative v. Guaranty Life Ins. Co. of Florida, 154 Fla. 332, 17 So.2d 515. We repeat here what we said there:, “The principle of estoppel would in such a situation immediately suggest itself.”
We find ourselves in disagreement with the chancellor though we are certain he undertook to adhere meticulously to our decisions as he interpreted them.
We decide that Exerdell’s property should be subjected to lien in the amount of the money she extracted from the Smiths.
Reversed.
THORNAL, C. J., ROBERTS and O’CONNELL, JJ., and MASON, Circuit Judge, concur.