MERCHANT'S HOSTESS SERVICE OF FLORIDA, INC., a Florida corporation, v. MRS. T. R. CAIN, JR., also known as CATHERINE Z. CAIN, and her husband, T. R. CAIN, JR.

9 So. (2nd) 373                                    En Banc
July 28, 1942

Charles E. Bennett and G. P. Garrett, for appellant.
Maguire, Voorhis & Wells, for appellees.

TERRELL, J.:

In March, 1941, appellant as complainant filed its bill of complaint in the circuit court praying that a certain contract entered into between it and appellees dated June 6, 1939, be construed and enforced, that an accounting be had and that defendants, appellees, here, be enjoined from further breaching said contract. The bill of complaint was amended and then dismissed on motion of defendants. This appeal was prosecuted.

The theory of the bill of complaint is that Merchant's Hostess Service of Florida, Inc., is a Florida corporation engaged in a personal advertising business which requires trade uses, trade methods, and trade secrets which it has developed, that on July 6, 1939, it entered into contract with Catherine Z. Cain who was joined by her husband T. R. Cain, Jr., to furnish said Catherine Z. Cain its trade methods and trade secrets for the purpose of establishing a similar business in Orlando, Florida, the consideration being that the Cains would pay complainants fifty per cent of all their gross receipts for a period of five years and that for a period of ten years they would not engage directly or indirectly in the same kind of business in the State of Florida.

Catherine Z. Cain accepted the contract and made payments under it for a period of one year and then wrote complainants a letter cancelling it but continued to carry on the business she had built up. The bill

alleges that the obligation of the contract was assumed solely by Catherine Z. Cain and that the business including its earnings was her sole property, that the Cains are insolvent, that appellant has complied with the contract on its part, and that it has no lien on the property for its compensation. The bill prays for an injunction, an accounting, a declaratory judgment and to charge the business of defendant with the purchase price thereof to the extent of fifty per cent of the gross receipts under Section 2, Article XI of the Constitution.

The crucial question with which we are confronted is whether or not the product of the contract brought in question is such as may be charged in equity with the purchase price thereof and sold as provided by Section 2 of Article XI of the Constitution of Florida. All the other questions follow in the wake of this one.

The appellee contends that the product of her contract with appellant is not such property as is contemplated by Section 2 of Article XI of the Constitution and cannot therefore be charged in equity for the purchase price thereof. She also proffers the defense of coverture and contends that the contract cannot be enforced against her because she is a married woman. She relies on Phillips v. Lowenstein, et al., 91 Fla. 89, 107 So. 350; Persons v. Tyree, 119 Fla. 288, 161 So. 408; Meeks v. Johnson, et ux., 85 Fla. 248, 95 So. 670; Green v. Miller, 102 Fla. 767, 136 So. 532, and like cases to support her contention.

Section 2 of Article XI of the Constitution is as follows:

"A married woman's separate real or personal property may be charged in equity and sold, or the

uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent."

A married woman's separate property may be in lands, houses, bonds, notes, or any property tangible or intangible. It may also be an idea if purchased and converted into property as alleged in this case. The sale in question was of an idea, that is to say, trade secrets, trade uses, and trade methods from which an alleged valuable property was acquired. If appellant can show that as a result of the contract with it appellee took the idea sold her and acquired a valuable property for which she has not accounted it is equivalent to and may be construed as the "price of any property purchased by her" or it may be construed as a "thing due upon any agreement made by her in writing for the benefit of her separate property or for the price of property purchased by her." When this is done, it may be charged in equity and sold to satisfy the claim of appellant as contemplated by Section 2 of Article XI of the Constitution.

In response to the defense of coverture, we hold that it should not be allowed in this case. The disability of coverture is a hangover from the old common law and has no more place in present day equity practice than the old "Pleas Roll" of the early day. It was predicated on the theory that in marriage, husband and wife become one person, somewhat

after the pattern defined in Genesis 2:24. The legal existence and personality of the wife suspended during coverture and merged into that of the husband under whose protection she was bound. She could not contract with her husband · or he with her. The husband had complete dominion over the wife and could direct her conduct. Her will, contracts for necessities and other agreements had to be approved by him. The civil and Spanish law were to the contrary and even under the common law, the rule did not apply to the queen.

The disability of coverture was the product of a period in which man was smeared with the externals of a potential culture. The wife was little more than a chattel and was considered incapable of taking an education or following a career. All she was expected to thrill over was accouchment and the kitchen. The drawing room and the woman's college were as far in the future as it was to John Marshall when Justinian proclaimed his Code. It was the dark ages of the common law but it had its renaissance. The fact that woman has an I. Q. rating the equivalent of man's is no longer an open question. She has entered the trades, crafts, business, and professions and has demonstrated marked skill in all of them except in cases where mere physical prowess is the deciding factor. Se has not achieved distinction as a prize fighter, a lumberjack, or a stevedore. She is directing much of the world's business; she has created and controls much of its wealth, she sits on boards of directors, runs schools, charities, and hospitals, is a sane counsellor, and has served as Judge, Governor, United States Senator, Congresswoman, and legislator, and is the directing hand in many institutions that

are nominally conducted by men, all this absent the "hunch" of a husband.

It is utterly foolish to contend that in marriage, the personality of the wife is submerged in that of the husband. Personalities differ as the ones who wear them but they do not merge in husband and wife unless one or the other happens to be of the floor dummy variety. So if there was ever sound reason for the disability of coverture, that reason has disappeared, every element on which it was predicated has been outmoded and discarded. In the marital state, husband and wife are partners and equals; in business both know their way about and being so there is no earthly reason why the wife should be hobbled by such an impediment. There is every reason to discard it when its main use is to void her obligations.

In many contracts such as deeds and mortgages, the disabilities of coverture have been imposed by statute and in many states, they have been removed in the same manner. It is not in the province of a court to tinker with these but in equity the situation is different. In Blood v. Hunt, 97 Fla. 551, 121 So. 886; Persons v. Tyree, 119 Fla. 288, 161 So. 408; Matthews v. McCain, 125 Fla. 840, 170 So. 323; and other cases, this Court limited the rule to stated facts which we thing are applicable to and rule the case at bar. The writer of this opinion and Mr. Justice CHAPMAN are of the view that since every factor on which the disability of coverture was predicated has disappeared that in equity it should be removed in all cases where a married woman goes out and contracts for business or commercial purposes. The reason ceasing, the law itself ceases is a well settled legal

maxim. It is unconscionable to permit a married woman to make a contract to carry on a business in competition with others and to enter into other transactions for profit purposes and then attempt to avoid her obligations incident thereto on the ground of coverture. I think that in all such transactions, she should be bound as others are bound and that the defense of coverture should no longer be available to her in equity.

This holding affects only the marital right as it relates to property and contracts for business or profit purposes. It in no way affects the family status and the mutual obligations that pass from one spouse to the other in that relation. None of the so called married woman's acts attempt to do more.

It follows that the judgment appealed from must be and is hereby reversed with directions to reinstate the bill and try the cause in line with the view herein expressed.

Reversed.

WHITFIELD, BUFORD, CHAPMAN, THOMAS and ADAMS, JJ., concur.

BROWN, C. J., dissents.

BROWN C. J., dissenting:

Our legislature has adopted the common law in so far as it is not inconsistent with our Constitutions, State and Federal, and our Statutes. This Court cannot legislate; it can only interpret and apply the law as it actually exists. I am inclined to the view that the common law disabilities of coverture are outmoded, but such of them as are still in force and effect can only be repealed by the Legislature. See

Sec. 87, C.G.L., and Sec. 2.01 of Florida Statutes, 1941, which clearly continues in effect those common law disabilities of coverture which are not inconsistent with our Constitution and Statutes.