## SHINN v. McLEOD et al.

### No. 1005–M–Civ.

District Court, S. D. Florida, Miami Division.

Jan. 16, 1945.

Evans, Mershon & Sawyer, of Miami, Fla., for plaintiff.

William A. Lane, of Miami, Fla., for defendant.

HOLLAND, District Judge.

On September 14, 1944, complaint was filed by plaintiff, a citizen of Pennsylvania, seeking judgment on a promissory note executed by defendants, Lottie P. McLeod and W. J. McLeod, her husband, the note being dated April 15, 1936. The defendant, Lottie P. McLeod, moves to dismiss. The motion was argued November 17, 1944, and time was granted for the submission of written briefs. The last brief was submitted January 4, 1945. The case has been thoroughly considered, and the Court is of the opinion that the motion to dismiss should be sustained as to the defendant, Lottie P. McLeod.

■ The note was made, and was payable, in Florida. Then and now Mrs. McLeod was and is a married woman domiciled in Florida. The basis of her motion to dismiss is coverture. By Territorial Act of November 6, 1829, the common law of England was expressly declared to be in force in the Territory of Florida, and that provision remains in force. Blood v. Hunt, 97 Fla. 551, 121 So. 886; Florida Statutes 1941, Section 2.01, F.S.A. Decisions under notes 1 to 6, inclusive, Fla. Stat.Ann. (1941), F.S.A. are in point. There became effective on June 4, 1943, Chapter 21932 of the Laws of Florida, F.S.A. §§ 708.08–708.10 ("Florida Emancipation or Enabling Act"), empowering a married woman to contract, to sue, to manage her property, sell and mortgage her property, and to execute any kind of instrument without joinder by her husband, and act "in all respects as fully as if she were unmarried." The common law of England, as it existed on July 4, 1776, when not inconsistent with the Constitution and Laws of the United States, and the Acts of the Legislature of Florida, has been the common law of Florida. From the Territorial Act of November 6, 1829, to the effective date of the "Florida Emancipation Act" on June 4, 1943, the promissory notes of married women executed in Florida were void in the State of Florida. Lewis v. Yale, 4 Fla. 418; Dollner, Potter & Co. v. Snow et al. 16 Fla. 86; Hodges v. Price, 18 Fla. 342; Virginia-Carolina Chemical Co. v. Fisher, 58 Fla. 377, 50 So. 504; Blood v. Hunt, 97 Fla. 551, 121 So. 886; Smith v. Chapman, 116 Fla. 576, 156 So. 544; Hogan v. Supreme Camp of American Woodmen, 146 Fla. 413, 1 So.2d 256; 30 C.J. 751; Elliott et al. v. Peirsol's Lessee et al., 26 U.S. 328, 1 Pet. 328, 7 L.Ed. 164.

■ The said "Florida Emancipation Act" is not retroactive in its terms, nor in its effect. Page on Contracts, Vol. 3, Sec. 1658. The following cases from other States sustain the position of the movant. Stephens v. Hicks, 156 N.C. 239, 72 S.E. 313, 36 L.R.A.,N.S., 354, Ann.Cas.1913A, 272; Rogers v. Lynch, 44 W.Va. 94, 29 S.E. 507. The following case from the District of Columbia likewise sustains the position of the movant. Bradbury v. Howard, 58 App.D.C. 383, 31 F.2d 222. The following text sustains the position of the movant. 59 C.J. 1159.

The changing conditions incident to the advancement of civilization have been recognized judicially as they affect the status of a married woman and her contracts. These changing conditions are matters of development and of slow progress. The reasons for the common law of England, in effect in the State of Florida, may and do change, but the law itself does not change, until properly so done. Under the common law a contract with a married woman was void. The rea-

sons which prompted and brought about this state of the common law, that is the state of society, the recognition or non-recognition of property rights in the wife, the status of the wife as a person under coverture, were instrumental in producing the result, to-wit, that the contract of a married woman was void according to the common law. These changing conditions have occasioned judicial comments from time to time, and these changing conditions have culminated in the legislative enactment in Florida with reference to married women, to which reference has been made.

In Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 237, 86 A.L.R. 466, it was stated: "Courts of justice are bound by the rule of stare decisis to follow the common law as it has been judicially declared in previously adjudicated cases. And the courts as such have no inherent right to revise or amend the settled rules of the common law to suit their own ideas of wherein the law should be modernized by amendments which would overturn long standing precedents. But it does not follow from what has been said in this regard, that the courts are wholly powerless to remold and reapply the ancient rules so as to fit them to modern conditions, where there has arisen and become involved, new factors of life and business arising from the complexities of a mechanized era of human progress. And indeed it is the duty of the courts to do so in cases appropriately calling for a modern application of ancient precepts to new facts of human experience in an advancing civilization."

■ Courts should not change the fundamental law. In this Layne case the Court was dealing with the law of libel, that is publication by a newspaper of information gained by its reporter, and the law was declared to be that the *rules* of the common law may be changed by court decision. This does not justify a court in declaring a void contract to be valid and enforceable merely because public policy may have so changed that it may be deemed advisable by the legislative body to act in the matter.

In Banfield v. Addington, 104 Fla. 661, 140 So. 893, 898, it was held that the reason for the rule of the common law had failed, and that the rule itself should fail. Judge Davis discussed these changing conditions at length.

"But the foregoing view of the legal relationship of husband and wife is no longer warranted, when by modern conditions and through modern statutory provisions the wife has been emancipated with respect to her personal wages and earnings. Where a reason for a rule of the common law, which is the spirit and soul of that law, fails, the rule itself fails. See Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 10 L.R.A., N.S., 1051, 10 Ann.Cas. 1148. It is only logical and just therefore that the courts take cognizance of those new conditions, which, by their necessary implication, have modified the factors necessary to support pre-existing restrictions on the legal liabilities of married women which existed under the common law as construed in the early cases on the subject. Martin v. Robson, 65 Ill. 129, 16 Am.Rep. 578. This court itself has just recently declared itself in line with a judicial recognition of such changed conditions, statutory implications, and necessary modifications as affecting the rights and liabilities of married women. See the case of Hoover v. Hoover [103 Fla. 846], 138 So. 373, 374, lately decided by this court, where Mr. Justice Terrell, in delivering the opinion of the court, referred to the fact that 'the modern rule in almost every state in this country has relaxed the old common-law doctrine of coverture.'

"It may have been true that because under the early common law a married woman was incapable of making a contract, that she was consequently incapable of holding the relation of master to servant; that, if she hired domestic servants or others whose services the husband accepted, she was considered as having done so as her husband's agent and on his behalf; that they were to be considered as his servants and not hers, and that he alone was responsible to and for them. Ferguson v. Neilson, 17 R.I. 81, 20 A. 229, 9 L.R.A. 155, 33 Am.St.Rep. 855. But in this state a statute has been enacted (section 5871, Comp.Gen.Laws, section 3952 Rev.Gen.St. [F.S.A. § 708.06]) which gives to a married woman the right to make a contract of employment, and which secures to such married woman her wages and earnings acquired by her in 'any' employment separate from her husband, and entitles her to sue for and recover the same as though she were a single woman. If a married woman can become an employee under the statute, it is anomalous to hold

that she is forbidden to become an employer as well."

This text referred to the contract of the married woman as being void under common law, but in no way did the Court undertake by decision to change this law. The Court holds that Section 3952 of the Revised General Statutes, F.S.A. § 708.06, giving the right to a married woman to make a contract of employment, warranted a holding that she may employ an agent in a business undertaking, and that she could be held liable as a principal. The case deals with this change of public policy with changing conditions, but it does not undertake to justify such changed public policy as warranting a judgment against a married woman on a void contract. In Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780, the Court was dealing with the survival of a cause of action against a wrongdoer. The recognition of the changed public policy was applied as to a rule of the common law, but did not amount to a judicial declaration that a contract void at common law was the subject of a judicial declaration that nullity could be transformed to an altered status of validity.

In Hoover v. Hoover, 103 Fla. 846, 138 So. 373, the Court considered another Florida statute which granted the deserted wife the right to prosecute and defend an action, and discussed the old common law doctrine of coverture as a rule. This case, however, lends no support to the contention now made by the plaintiff that a change in public policy with modern conditions recognized warrants a judicial granting of validity to a contract which by the common law was absolutely void. Merchant's Hostess Service of Florida, Inc., v. Cain, 151 Fla. 253, 9 So.2d 373, is a case dealing with the product of an executed contract to which a married woman was a party. The contract had been put into operation; business had been conducted with profitable results in the shape of an accumulated estate sought by a creditor to be charged in equity. This case is thoroughly distinguishable from the case at bar.

The case of Workingmen's Co-Operative Bank v. Wallace, 151 Fla. 329, 9 So.2d 731, supports the conclusion I have reached in this case, and need not be discussed. To the same effect may be cited the case of Kellogg-Citizens National Bank, etc., v. Felton, 145 Fla. 68, 199 So. 50.

The case of Roope et al. v. Provident Institution, etc., 5 Cir., 141 F.2d 1007, sustains the conclusion reached here in every respect. In that case the married woman's contract, executed in Massachusetts, was held to be valid and enforceable in Florida. The Florida decisions were discussed with reference to public policy in Florida as related to the enforcement of contracts, and the enforcement judgment of the District Court was upheld, both under the Florida decisions, before the enabling Act of 1943, Chapter 21932, Laws of Florida, F.S.A. §§ 708.08–708.10, and under public policy as declared in that Act.

This case illustrates the necessity of differentiating between public policy as applied to an enforcement of a married woman's contract and public policy as applicable to the reasons for the common law itself. Changing conditions in regard to the status of a married woman, which are recognized by the Florida Supreme Court, are recognized as warranting the courts in judicially applying such changed public policy to rules of the common law, but not to the common law itself. The contract once invalid may not be declared valid by judicial decree alone, and the statute in question, Chapter 21932, Laws of Florida 1943, does not work retroactively to make a void contract valid and enforceable.

The case of Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, was not cited by counsel. It deals with an entirely different matter, but the discussion of the public policy of the common law period and the conditions productive of a change in public policy furnishes interesting collateral reading. This changing public policy is relevant to the matter of a declared public policy affecting enforceability of contracts and rules of evidence, as distinguished from such changes as affecting validity of contracts. Substantive law dealing with rights and with the validity of contracts should enjoy stability of decision, and not be subject to ever changing public opinion as may, with the passage of time, come to be considered a currently recognized public policy. When substantive rights are to be altered, the law making body should be the haven of those seeking a recognition of such changes in public policy.

The motion to dismiss as to the defendant, Lottie P. McLeod, is sustained, and proper order may be submitted.