CHARLES J. MATTHEWS and HARRY HAND, as Sheriff of Orange County, v. JEWEL WELDON McCAIN, *et vir*.

170 So. 323.

Opinion Filed October 23, 1936.

*George P. Garrett,* for Appellants;
*H. N. Roth,* for Appellees.

BROWN, J.—This is an appeal from an order denying a motion to dismiss the bill of complaint.

Jewel Weldon McCain, joined by her husband and next friend, G. F. McCain, filed her bill of complaint in the Circuit Court of Orange County, Florida, against Harry Hand as Sheriff of Orange County, and Charles J. Matthews of Philadelphia, Pennsylvania, praying that Harry Hand as Sheriff of Orange County be required to return to complainant her separate statutory property levied upon by said defendant in the common law action mentioned in the bill of complaint; and that Charles J. Matthews, his agents, attorneys and employees be enjoined from interfering with the use and enjoyment by complainant of her separate statutory property.

The bill of complaint alleged substantially that complainant was, on June 9, 1932, a married woman, and has been at all times since, being married to G. F. McCain; that on or about June 9, 1932, Charles J. Matthews purported to execute to complainant and her husband, G. F. McCain, a five-year lease on certain real property in Orange County; that in and by said lease, complainant and her husband, G. F. McCain, held said leasehold estate as tenants by the en-

tireties; that on December 5, 1934, Harry Hand, as Sheriff of Orange County, levied upon and took into his possession certain personal property, the separate statutory property of complainant under authority of a distress warrant issued by the Circuit Court of Orange County in a common-law action pending therein in which Charles J. Matthews was plaintiff, and complainant Jewel Weldon McCain and her husband, G. F. McCain, were defendants; that said property was, on June 9, 1932, and has been ever since that date, the separate statutory property of complainant; that complainant is not the tenant or lessee of the premises described in said lease, nor is she a sub-lessee or assignee of the lessee, and that Harry Hand, as Sheriff of Orange County, acted without authority of law in levying upon and taking into his possession complainant's separate statutory property; that complainant is without funds, and is unable to procure a bond in double the amount of the goods claimed by her, in the common-law action as is permitted under Section 5429 (3565) C. G. L.; and that she is without an adequate remedy at law and is entitled to maintain this proceeding in equity under Section 4 of the Declaration of Rights of the Florida Constitution.

The defendants filed their joint and several motion to dismiss the bill of complaint. The substance of the grounds of the motion are: that the bill is without equity; that the bill discloses complainant has a plain, adequate and complete remedy at law; that the lease creates a several liability on the part of Jewel Weldon McCain which entitled Charles J. Matthews to distress her separate statutory property for past due rent; that the lease refutes the allegation that Jewel Weldon McCain is not a tenant or lessee of the premises; that Jewel Weldon McCain is unable to make bond as provided by statute does not mean that she does not have a

plain, adequate and complete remedy at law; that under Section 5420 C. G. L. Charles J. Matthews has a lien upon the property he has distressed; that coverture is no defense to enforcement of the landlord's lien under Section 5420 C. G. L.; that the landlord's right to distress proceedings is not enforced in equity under Section 2 of Article XI of the Constitution, but is derived from the common law which antedates the Constitution of 1885 and even Florida's admission into the Union.

The Court denied the motion to dismiss the bill of complaint and allowed the defendants until the following rule day in which to file their answer to the bill.

From the order denying the motion to dismiss the bill, the defendants took an appeal.

The sole question contested on this appeal is whether when a Sheriff levies a distress warrant upon personal property located on the leased premises in order to enforce a landlord's claim for distress for rent due under a written lease executed by and to a wife and her husband, and it develops that the property levied on is the separate statutory property of the wife, is the property distrainable? All other questions are abandoned by the parties litigant. But in support of its main position, appellees contend that the lease created an estate by the entireties.

The lease contained the following description of the parties:

"This indenture, made this 9th day of June, A. D. 1932, by and between Charles J. Matthews of the City of Philadelphia, State of Pennsylvania, hereinafter called first party, and Jewel Weldon McCain, joined by her husband, G. F. McCain of Orlando, Orange County, Florida, hereinafter called second party."

An estate by the entireties can be created in property capable of heing held as an estate by the entireties where a conveyance of transfer is made to husband and wife without expressly specifying how they are to take. If a man and woman are husband and wife, a conveyance to them, where no contrary intent is expressed or indicated by the language used, regarding the estate conveyed, vests in them an estate by the entireties. 13 R. G. L. 1111; 30 C. J. 558-559.

At common law, an estate by the entireties could exist in an estate in fee, in tail, for life, for years or other chattel real. 13 R. G. L. 1105, Sec. 128; 18 Am. Dec. 382 note; 30 L. R. A. 317-319, note; 2 Preston on Abstracts of Title 39; Dowing v. Seymour, Croke's Reptx. Elizabeth 911; Wiscot's Case, 76 Eng. Rep. (Full Reprint) 555. Estates by the entireties are recognized in Florida as they existed at common law except as modified by statute or constitutional provisions. Ferris-Lee Lumber Co. v. Fulghum, 98 Fla. 171, 125 So. 697; English v. English, 66 Fla. 427, 63 So. 822; Bailey v. Smith, 89. Fla. 303, 103 So. 833, Anderson v. Truman, 100 Fla. 727, 130 So. 12. A leasehold in land is a chattel real. 2 Blackstone's Commentaries 386; Davis v. Investment Land Co., 296 Pa. 449, 146 Atl. 119, 121. Estates by the entireties have not been abolished in Florida in chattels real, so they exist as at common law.

The lease in question was made for a term of five years. It was a chattel real, and was an interest in which an estate by the entireties could exist.

Whether an estate by the entireties exists as the result of the acquisition of property by and in the names of both husband and wife, must be determined by a consideration of the nature and terms of the transaction as portraying the

intent of the parties and of the rules of law applicable thereto. Bailey v. Smith, 89 Fla. 303, 103 So. 833.

The words of conveyance of the leasehold are: "Jewel Weldon McCain, joined by her husband, G. F. McCain." The lease contract provided that the property might be used for a tea-room, cafe or other business purpose, but the bill does not allege to what use the property was put. The lease is signed by both the wife and the husband, the wife's signature appearing before that of the hsuband at the end of the lease. Because the wife's name appears before that of the husband in the clause describing the parties instead of afterwards; beacuse the words "joined by her husband" instead of "and her husband" are used to connect the names of Jewel Weldon McCain with G. F. McCain; and because the wife's signature appears before that of her husband at the end of the lease, it is at least doubtful whether the parties intended thereby to create an estate by the entireties. Any one of these things standing alone might not have been sufficient to show that the parties did not intend that the husband and wife should take as an estate by the entireties; but the sum total of all of them tend strongly to indicate that the parties did not intend to create an estate by the entireties; and it further indicates that the wife probably was the controlling influence in contracting for the lease of the property and that the husband was joined because this was deemed necessary to the making of a valid contract. But we do not deem it essential to the decision on this appeal to determine whether this instrument created an estate by the entireties or not. In any event, as will later appear, the wife's property was not subject to distraint under the facts alleged.

At common law, the wife's existence was merged in that of her husband, and it is from this idea of unity that most

of the so-called disabilities of marired women have arisen. Tresher v. McElroy, 90 Fla. 372, 106 So. 79; De Graum Aymar & Co. v. Jones, 23 Fla. 83, 6 So. 925. But the common law rule has been modified in this State by statutes, among them mainly being Sections 5866-5872 C. G. L. and also by constitutional provisions, Article XI, Sections 1 to 3 of the Constitution, the first section of which is embraced in Section 5866 C. G. L. Tresher v. McElroy, 90 Fla. 372, 106 So. 79. Article XI, Section 2, of the Constitution removes from married women, under carefully limited restrictions, the common law disability of coverture in the cases therein specifically enumerated, and enables her in such cases to assume certain obligations that can be charged in equity upon, and enforced out of, her separate property. Craven v. Hartley, 102 Fla. 282, 135 So. 899; Micou v. McDonald, 55 Fla. 776, 46 So. 291.

A married woman can legally contract only as provided by law. Phillips v. Lowenstein, 91 Fla. 89, 107 So. 350. Under the law, a married woman who has not been made a free dealer under Sections 5024-5028 C. G. L. has no power to make a contract that would be legally binding on her personally except as her rights are affected by Article XI, Section 2, of the Constitution. Blood v. Hunt, 97 Fla. 551, 121 So. 886; Sumner v. Osborne, 101 Fla. 742, 135 So. 513. To bind her separate statutory property for the husband's debts, the married woman must give her consent by some instrument in writing executed according to the law respecting conveyances by married women. The law places only two restrictions upon the right of the married woman to convey or mortgage her separate statutory property: (1) that her husband shall join in such mortgage or conveyance and (2) that it shall be acknowledged and au-

thenticated in the particular manner described.   Russell v. Henslee, 101 Fla. 1318, 132 So. 489.

The lease which was signed by the married woman and her husband was an attempt to contract with a married woman and to make her liable with her husband for the payment of the rent; and the contract not having been executed in such form as to bind the separate statutory property of the married woman, is unenforceable as against such property, even though it be a valid contract as against the husband and binding on him.   See in this connection 13 R. C. L., 1342, Sec. 381.

Appellant contends a distress may be levied upon the separate property of Mrs. McCain for the past due rent because of a provision in the lease to the effect that the lessor should have the option either to distrain for rent or to declare the lease at an end.   Inasmuch as the lease contract was unenforceable against the separate property of Mrs. McCain, the clause referred to could not have the effect contended for.

It is also contended that at common law the landlord had the right to distrain any property located on and usually kept upon the leased premises, and that since the separate property of Mrs. McCain was located on the leased property, to which her husband held a valid lease, the landlord had a right to distrain the same for past due rent.

Subject to certain exceptions, the general rule at common law was that the landlord had the right to seize and hold as a distress until the rent was paid or the service performed, any property found on the leased premises, whether belonging to a stranger or not, and the landlord usually gave up the goods as soon as he found that they were not the tenant's, as his continuing to hold them would not induce the tenant to pay.   But during the reign of William and

Mary, a statute was enacted (2 Wm. & M. s. 1. c. 5) by which the landlord was given the right to sell any goods seized and apply the proceeds to the payment of rent unless the tenant or owner of the goods first paid it. 9 Eng. Rul. Cas. 670 note; 3 Blackstone's Commentaries 6-8; 3 Kent's Commentaries 473, 474; Trieber v. Knabe, 12 Md. 491, 71 Am. Dec. 607; Blanche v. Bradford, 38 Pa. St. 344, 80 Am. Dec. 489. The exceptions to the general rule were laid down by Lord Chief Justice WILLES in the case of Simpson v. Hartropp (1744) Willes 512, 9 Eng. Rul. Cas. 651, 1 Smith's Leading Cases (8th Ed.) 450, and to the present time, the correctness of the opinion of the court therein has never been questioned, so far as we know, either in England or this country. See Trieber v. Knabe, 12 Md. 491, 71 Am. Dec. 607, 609. The exceptions laid down there are as follows:

"There are five sorts of things which at common law were not distrainable.

"1st. Things annexed to the freehold.

"2nd. Things delivered to a person exercising a public trade to be carried, wrought, worked up, or managed in the way of his trade or employ.

"3rd. Cocks or sheaves of corn.

"4th. Beasts of the plough and instruments of husbandry.

"5th. The instruments of a man's trade or profession.

"The first three sorts were absolutely free from distress, and could not be distrained, even though there were no other goods besides..

"The two last are only exempt *sub modo*, that is, upon a supposition that there is sufficient distress besides.

"Things annexed to the freehold as furnaces, millstones, chimney-pieces, and the like, cannot be distrained, because

they cannot be taken away without doing damage to the freehold, which the law will not allow.

"Things sent or delivered to a person exercising a trade to be carried, wrought, or manufactured in the way of his trade, as a horse in a smith's shop, materials sent to a weaver, or cloth to a tailor to be made up, are privileged for the sake of trade and commerce, which could not be carried on if such things under these circumstances could be distrained for rent due from the person in whose custody they are.

"Cocks and sheaves of corn were not distrainable before the statute 2 Will. & M. c. 5 (which was made in favor of landlords), because they could not be restored again in the same plight and condition that they were before a replevin, but must necessarily be damaged by being removed.

"Beasts of the plough, etc., were not distrainable in favor of husbandry (which is of so great advantage to the nation), and likewise because a man should not be left quite destitute of getting a living for himself and his family. And the same reasons held in the case of the instruments of a man's trade or profession.

"But these two last are only privileged in case there is distress enough besides; otherwise they may be distrained.

"These rules are laid down and fully explained in Co. Lit. 47 a., b. and many other books which are there cited; and there are many subsequent cases in which the same doctrine is established, and which I do not mention because I do not know any one case to the contrary. Simpson v. Hartropp, *supra*. See Trieber v. Knabe, 12 Md. 491, 71 Am. Dec. 607; 9 Eng. Rul. Cas. 650."

Insofar as the lessee is concerned, in Florida the foregoing exceptions are innocuous. These exceptions can apply in Florida only to the property of a third person found

on the leased premises, because Section 5421 C. G. L. states that no property of any *tenant* or *lessee* shall be exempt from distress and sale for rent, except beds, bed clothes and wearing apparel. And our construction of Section 5420 C. G. L., construed in connection with Sections 5423-5430 C. G. L., is that (with the exception of agricultural products raised on the land during the current year for which it is rented) a distress warrant cannot lawfully be levied on the property of third persons, who are neither lessees, nor assignees, nor sub-lessees of the tenant, even though such property is "usually kept" on the premises by the lessee. Without going into detail, we think that these provisions, most of which are derived from the statutes of 1879 and 1895, and should be construed together, are inconsistent with the common law rule contended for by appellant.

At common law, the husband was entitled to reduce to his possession all personal chattels of his wife, 13 R. C. L. 1134, *et seq.,* and such chattels were subject to distress for rent owing by the husband. In this country, it has been held that a Married Woman's Property Act securing to a married woman the right to the control and enjoyment of her personal property, does not itself exempt the chattels of the wife from liability to distress for rent owing by the husband, Blanche v. Bradford, 38 Pa. St. 344, 80 Am. Dec. 489, though a husband's creditors have no general right to subject the wife's separate statutory estate to the payment of their claims. 13 R. C. L. 1159, *et seq.*

The Florida Constitution provides that a married woman cannot make her separate property liable for the debts of her husband without her consent given by some instrument in writing executed according to law respecting conveyances by married women. Article XI, Section 1, Constitution. The Constitution and statutes of Florida must of

course control, and take precedence over the common law when there are any inconsistencies between them. The case of Blanche v. Bradford, 38 Pa. St. 344, 80 Am. Dec. 489, in which the Pennsylvania Court held the common-law right of the landlord to distress the separate property of the wife for rent owing by the husband not affected by the provisions of the Married Woman's Property Acts of that State, is not controlling in this State because our organic law provides by clear mandate that a married woman cannot obligate her separate property for her husband's debts except in a certain manner. The lease in this case did not purport to bind the separate property of Mrs. McCain in the manner provided by law, but was an attempt to contract with a married woman who was joined by her husband. So far as the personal liability of the wife was concerned, the contract was void as to the married woman, though valid as to the liability thereon of the husband. Any attempt by the landlord to try to distrain and hold or sell the separate statutory property of Mrs. McCain for the rent due on the contract of lease between Mr. McCain and the lessor would be an attempt to hold the separate statutory property of a married woman liable for the debts of her husband, although such property had not been obligated by her in an instrument in writing executed according to the law respecting conveyances by married women, which would be in violation of Article XI, Section 1, Constitution. Therefore, distress cannot be maintained against the separate property of a married woman, under the circumstances of this case.

Section 5429 C. G. L. negatives the theory that the property of third persons may be distrained, in that it provides that third persons claiming property distrained may interpose and prosecute their claim for it in the manner pro-

vided in similar cases of claim to property levied on under execution by Sections 4517-4521 C. G. L.

However, the question as to whether the remedy at law was, under the facts alleged in the bill, full, adequate and complete so that complainant could not resort to equity has not been embraced in the statement of questions involved nor argued by counsel. The chancellor held that the remedy at law was not adequate and complete, and we will not go out of our way to consider a question which has been abandoned by the parties.

Since the complainant is insisting in this bill of complaint upon the preservation of her constitutional and statutory rights, and since there is merit in this, her main contention, our conclusion is that the order of the chancellor denying the motion to dismiss should not be disturbed.

Affirmed.

WHITFIELD, C. J., and ELLIS and TERRELL, J. J., concur.

BUFORD and DAVIS, J. J., dissent.

DAVIS, J. (dissenting).—A married woman has the right to open and operate a tea room as an "employment" separate from her husband. Section 5871 C. G. L., 3952 R. G.. S. By doing so she becomes entitled to the wages and earnings of the business and by the same token, I think, to the liabilities incurred in the management of the business so undertaken, including liability for rent agreed to be paid as an incident to the statutorily permitted separate "employment" of the wife.

The "mort-main" of obsolete legal rules applicable to a status of married women that the Legislature has abolished, which married women have long since outgrown and by their own choice have abandoned in public, business and political life in the interest of a greater freedom of individual action, should no longer be applied in courts of jus-

tice having the power to reform their own dogmas to conform to changed circumstances. Therefore I am unable to concur in a pronouncement that when a married woman goes into the tea room business and rents a place within which to conduct it, that it is her husband, and not she, who becomes liable to pay the rent agreed upon, despite the fact that the Legislature has specifically divorced the hsuband from all control of his wife's separate "earnings" as well as wages.

My view is that Section 5871 C. G. L., 3592 R. G. S., is a statute of emancipation for married women with respect to separate business ventures embarked upon by them and that the burdens that are incident to such business ventures go with the privilege of conducting them, including legal liability of the business property employed by the married woman in her separate business venture to distress for rent when the rent is due and is not paid.

To say that a married woman engaging in a separate "employment" (meaning something more than a mere master and servant relationship) can sue and recover with respect to her property invested therein to realize the "earnings" (meaning capital gains as distinguished from mere wages) thereof "the same as though she were a single woman" (to use the statutory language of Section 5871 C. G. L., *supra*) without at the same time being subject to respond in law for liabilities that by *statute* are attached to *tenants,* whether male or female, married or celibate, is out of all harmony with justice and right such as the courts are ordained to administer, if indeed, not out of harmony with our holding in Bryan v. Bullock, 84 Fla. 179, 93 Sou. Rep. 182, wherein this Court held that when a married woman was authorized to own bank stock she could not

legally shirk the legal liabilities that were necessarily incident to the privileged ownership.

My view is that the necessary intendment of Section 5871, C. G. L., 3952 R. G. S., as well as of our landlord and tenant statutes is to make married women who exercise their statutory privilege to become tenants assume the legal burdens incident to that relation.

I think that the decree should be reversed.

BUFORD, J., concurs.