STURGIS, Judge.
Appeal by Julia M. Waechter, sole surviving defendant, from a final decree of foreclosure in favor of appellee, General Mills, Inc., plaintiff below, holding: (1) that the indebtedness secured was that of Carroll W. Waechter, appellant’s deceased husband and co-defendant, who died while the cause was pending in the lower court; (2) that the mortgage in suit was executed according to the law respecting conveyances of chattels by a married woman and therefore constituted such consent of Julia M. Waechter as to render her separate statutory property liable for her husband’s said debt; (3) that because the chattels described in the mortgage had been disposed of, “the Court is justified in entering a money judgment herein,” citing Edwards v. Meyer, 100 Fla. 235, 130 So. 57 (1930); and (4) that the appellant wife is indebted to plaintiff for the sum of $50,000 principal, $12,-500 interest, and $10,000 attorney’s fees. The trial court thereupon granted a motion of plaintiff-appellee to strike certain defenses to the amended complaint herein, granted plaintiff’s motion for final judgment, and entered judgment in favor of plaintiff against defendant Julia M. Waech-ter in the sum of $72,500, hence this appeal.
On October 4, 1962, plaintiff brought this suit to foreclose a combined real estate and chattel mortgage dated September 21, 1959, purporting to encumber certain real prop *205 erty in Clay County, Florida, and poultry located thereon “together with such other and additional poultry as may be added to the aforesaid and together with all progeny or offspring of said poultry.”
At a hearing before the chancellor on plaintiff’s application for the appointment of a receiver, plaintiff’s credit manager, Eikenberry, in testifying as to the transactions giving rise to the indebtedness in suit, repeatedly referred to the indebtedness as “Mr. Waechter’s indebtedness” and not once as the joint obligation of Mr. and Mrs. Waechter. In describing the indebtedness he said, inter alia:
“ * * * we made a payment for some indebtedness that Mr. Waechter had at the time we started doing business with him and that was charged into one of these accounts, I am not certain which one, but that was not feed that we advanced. It was feed that another company had advanced that he owed them, and we paid that company the amount of his indebtedness, and then there were some started pullets that were purchased as young birds, not mature birds, probably maybe eighteen, twenty weeks of age, but were raised elsewhere than on his farm. They were purchased as young birds, and the cost of that was included in his accounts. Then, from then on, it was feed purchases.”
Receivership was denied and plaintiff was granted leave to amend the complaint.
Plaintiff’s amended complaint charged that the mortgage was given by defendants to secure an existing indebtedness and future advances. It listed items of principal totaling $50,000, the maximum amount secured, and prayed for foreclosure and sale, that the proceeds be applied in payment of the amounts due plaintiff, and that if a deficiency occurred, the plaintiff be granted a decree therefor against such of the defendants as might “be found liable or responsible for the mortgage debt.”
The subject mortgage contained the signature of but one person, Edwin B. Davis, as a subscribing witness to the signatures of Mr. and Mrs. Waechter. This witness, as a notary public, also certified that Mr. and Mrs. Waechter personally appeared before him on September 21, 1959, at “General Mills, Inc.” and acknowledged the execution of the mortgage.
On December 6, 1962, plaintiff took the depositions of the defendants, Mr. and Mrs. Waechter. Mr. Waechter testified that he was engaged in the business of producing eggs for sale in two retail stores located in Jacksonville, Florida; that his wife had no interest in the egg farm business; that the real property upon which it was located was owned by them j ointly; that when the mortgage was executed the title to the chickens was in his name alone; that he procured his wife’s signature to the mortgage at plaintiff’s request; that as of the date of the deposition there were approximately 20,000 birds on the farm varying in age from 8 to 19 months. Mrs. Waechter testified that she signed the promissory notes and mortgage voluntarily; that she did not take any part in the operation of the egg farm; that she never had any conversations with any of plaintiff’s employees or representatives, and had no personal knowledge of her husband’s dealings with plaintiff.
The defendants by their answers admitted they were owners of the real property described in the mortgage, denied that they jointly owned the poultry located on the property, admitted that Mr. Waechter owned the poultry located on the real property, and as a special defense asserted that the mortgage was invalid because it was not witnessed and also because it was not acknowledged before a notary public as required by law.
On January 30, 1963, defendants took the deposition of plaintiff’s credit manager who handled the mortgage transactions on behalf of plaintiff. He testified that he could not recall having met the appellant, Mrs. *206 Waechter, prior to the receivership hearing in October 1962; that he never had any conversation with her about plaintiffs claim; that the note and mortgage in suit were the only transactions between plaintiff and Mrs. Waechter, the appellee; that plaintiff’s ledger sheets and other account records were headed “Carroll W. Waech-ter” ; that he never had any correspondence with Mrs. Waechter and knew of no letter to her from any other officer of plaintiff; and that certain monies paid by plaintiff to Floridandee Feeds, Inc., incident to the indebtedness in suit were charged to “Mr. Waechter’s accounts” with plaintiff.
On February 4, 1963, Mr. and Mrs. Waechter filed their amended third defense to the effect that at the time of the signing of the subject note and mortgage, defendant Julia M. Waechter was the wife of defendant Carroll W. Waechter, that she was not at that time and never had been indebted to plaintiff, and that said note and mortgage were given to evidence and secure only the debt of Carroll W. Waechter, and that said mortgage was not executed in the manner required by Article XI of the Constitution of Florida, F.S.A., and consequently did not operate to bind defendant Julia W. Waech-ter or the real estate owned by her and her husband jointly as an estate by the entirety. Plaintiff’s motion to strike this defense was denied.
On May 22, 1964, defendants took the deposition of Edwin R. Carter, branch manager of plaintiff’s Jacksonville plant, who on plaintiff’s application for a receiver had testified that he was not present when the mortgage was signed by the Waechters. On this deposition he testified that he never had any conversation with Mrs. Waech-ter, knew of no conversation between her and any other officer or employee of the plaintiff, could not recall that she ever came into plaintiff’s office, and he identified Edwin B. Davis (the notary) as a salesman in plaintiff’s employ.
Defendants filed a motion for summary final decree and further supported same by their affidavits to the effect that Mrs. Waechter was never indebted to plaintiff in any amount, had never had any business connections with the plaintiff, that the real property in suit was owned by Mr. and Mrs. Waechter as an estate by the entirety as shown by a copy of title deed attached to her affidavit, that the note and mortgage in suit related exclusively to the individual debt of Mr. Waechter and were not witnessed by any witness as to Mrs. Waechter or acknowledged by her before a notary public.
In opposition to said motion plaintiff filed an affidavit of its credit manager, Eiken-berry, to the effect that although he had never dealt with Mrs. Waechter personally in the transactions in suit, he had been informed by her husband, Carroll W. Waech-ter, that he (Mr. Waechter) was the manager of a joint operation with his wife of an. egg farm on the mortgaged premises and was at all times acting as her agent in the premises. This uncorroborated statement is repudiated by the mentioned testimony of the Waechters and is in fact rendered of no consequence by the affiant’s other statements and deposition which fail to reveal any transactions with Mrs. Waechter to that effect.
Prior to hearing on defendants’ motioni for summary decree, the plaintiff for the-second time took the deposition of Mr. and Mrs. Waechter, on which occasion Mrs. Waechter testified that no one but her husband was present when she signed the-note and mortgage in suit and that she had' never taken any part in the operation of the farm. Her husband deposed that one of plaintiff-appellee’s employees brought the note and mortgage to his egg farm, that he took same home where Mrs. Waechter signed them the next morning, and that he thereafter took same to plaintiff’s office- and left them there.
On November 18, 1964, the chancellor-granted appellant’s motion for summary decree with respect to the real property, holding that it was owned as an estate by the entirety, and that the debt secured by the - *207 real property mortgage was that of the husband alone and was void and unenforceable as to the realty because not executed in the manner required by Article XI, Constitution of Florida; and on that date denied appellant’s motion for summary decree as to the chattel mortgage and ruled that it proceed to foreclosure.
On December 2, 1964, the cause came on to be finally heard before the chancellor, at which time plaintiff produced an employee (Carter) who testified that the mortgage in suit was delivered to him by management personnel and then “was given to one of our salesmen to be processed on contract with Mr. Waechter”; that plaintiff-appellee has issued a check for $14,525.50 in payment of three invoices, from a concern referred to as “Floridandee Feed,” to “Mr. Carroll W. Waechter” covering pullets purchased by Mr. Waechter; that after execution and delivery of the mortgage plaintiff furnished “feed and other supplies to Mr. Waechter” and kept a complete ledger of “all the materials furnished Mr. Waechter”; that the ledger cards entitled “Carroll W. Waechter” and the statements dated August 31, 1962, addressed to “Mr. Carroll W. Waechter” reflected the transactions and “balances due on his account”; that as of September 28, 1962, the balance due “on Mr. Waechter’s account” was $67,-295.78”; and that interest on $50,000 from September, 1960, at six per cent would amount to $12,500 as of the date of the final hearing.
Plaintiff also offered in evidence portions of the depositions of Mr. and Mrs. Waech-ter proving their signatures to the notes and mortgage and a portion of Mr. Waechter’s deposition relating to his discussions with appellee’s employee, Mr. Eikenberry, concerning his accounts with appellee. Plaintiff then rested its case without offering any evidence of any indebtedness by Mrs. Waechter and defendants offered no evidence.
On the following day plaintiff served upon defendants its motion for entry of final decree, reciting that on December 6, 1962, defendant Carroll W. Waechter had testified that there were approximately 20,000 to 21,000 birds located on the chicken farm, and stated:
“4. Plaintiff further alleges on information and belief that either the Defendant, Carroll W. Waechter, or the Defendant, Julia M. Waechter, or both of the Defendants, after the institution of the above suit, have sold and disposed of the said poultry which was located on the Defendants’ farm in December, 1962, and at the present time the Defendants do not have in their possession or control any of the said poultry. Plaintiff further alleges that the Defendants have never filed any defense or other pleadings herein apprising the Court of the fact that either of the said Defendants or both of them had sold the said poultry since the institution of the above cause. Plaintiff further alleges that the above cause was begun in good faith for the purpose of the foreclosure of its lien on the real estate and poultry described in its complaint and amended complaint but because of the said acts of the Defendants the remedy that is due to the Plaintiff is impossible to be carried out.
“WHEREFORE, Plaintiff prays that the Court will enter an appropriate decree herein finding that because of the said acts of the Defendants the equitable remedy due the Plaintiff is impossible to be carried out and that the Plaintiff may have money compensation in lieu of such other remedy.”
Defendants moved to dismiss and to strike plaintiff’s said motion upon the ground that it sought to present a new and distinct cause of action, cognizable only in a court of law, concerning which the defendants were entitled to a trial by jury. Said motions were denied and the cause was set to be further heard before the chancellor on December 23, 1964, at which time the parties were accorded the right *208 to offer further testimony upon the issues made by plaintiff’s said motion for entry of final decree and such answer as defendants might file thereto. The defendants filed answer to said motion to the following effect: The first three defenses adopted by reference the previous defenses asserted by defendant Julia Waechter, reaffirmed her disclaimer of any interest in the subject poultry, as made by her first answer filed herein, and denied knowledge of the matters alleged in plaintiff’s said motion. By their fourth defense defendants asserted that plaintiff knew that the productive egg-laying life of the mortgaged chickens was not more than fourteen months; knew the age of the chickens on the farm in December, 1962, when the mortgage was given; knew of defendant Carroll W. Waechter’s practice of selling the hens when they were no longer producing, and nevertheless allowed this case to remain dormant from February, 1963, to February, 1964; and that plaintiff had in fact waited until final hearing to present to the court the matter of the subject motion. By their fifth, sixth and seventh defenses the defendants asserted that the relief sought by plaintiff’s said motion was barred by a prior judgment entered in favor of defendants in a suit at law brought by plaintiff to recover money damages.
At the supplemental hearing held December 23, 1964, plaintiff’s attorney offered a sworn statement that the delay in prosecuting the case had resulted from “trying to work a settlement of this claim out with Mr. Waechter” and by attempts to arrange a sale of the property, and then announced that plaintiff did not desire to offer further testimony.
Defendants offered in evidence a certified copy of the court file in a suit at law brought by appellee against defendants on a $17,000 note, which suit resulted in a judgment for defendants, then closed their case and renewed their motion for entry of a decree in favor of defendant Julia Waech-ter.
On January 6, 1965, the court on motion of plaintiff granted leave to amend its amended complaint to allege the incurring by plaintiff of obligations for expenses and attorney’s fees in the suit and to claim that the principal amount of the indebtedness secured by the mortgage was $50,000, that being the limit of the principal indebtedness secured thereby. On January 16, 1965, defendants filed defenses to the amended complaint as further amended, and on January 21, 1965, plaintiff moved to strike those defenses and also filed a “Motion for Final Judgment” on the ground that it was entitled to judgment against both defendants for the full amount of the mortgage indebtedness, interest thereon, and attorney’s fees.
On January 26, 1965, plaintiff filed its suggestion of death of defendant Carroll W. Waechter and moved the court to enter an order pursuant to rule 1.19(a) (2), Florida Rules of Civil Procedure, 30 F.S.A., whereupon it was ordered that the “action shall not abate but shall proceed against the surviving Defendant, Julia M. Waechter.”
On February 15, 1965, the trial judge entered the final decree appealed, in which he found that the indebtedness in suit was that of the deceased husband, Mr. Waech-ter; that the chattel mortgage was executed according to the law respecting conveyances of chattels by a married woman and therefore “constituted such consent of Julia M. Waechter rendering liable her separate statutory property for her husband’s debts,” and that, because the chattels described in the mortgage had been disposed of, the “Court is justified in entering a money judgment herein (see Edwards vs. Meyer, 130 So. 57)”; and that defendant Julia M. Waechter is indebted to the plaintiff for the sum of $50,000 principal, $12,500 interest, and $10,000 for attorney’s fees. On the basis of such findings the court entered judgment in favor of plaintiff against defendant Julia M. Waechter in the sum of $72,500.
*209 The decree appealed recites, inter alia, that “The indebtedness described in this Final Decree was that of Carroll W. Waechter, now deceased, and former husband of the Defendant, Julia M. Waechter.” It follows that the wife’s liability for such debts is governed by Section 1, Article XI, Constitution of Florida, which provides:
“Separate property not subject to husband’s debts.- — All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterward by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women.”
The chancellor held, however, that the chattel mortgage sought to be foreclosed was in writing and executed according to law respecting conveyances by married women of the class of property to which the consent relates, citing Springfield Co. v. Ely, 44 Fla. 319, 32 So. 892 (1902); and on that premise found that the chattel mortgage constituted such consent of Julia M. Waechter as to render her separate statutory property liable for her husband’s debts. The appellant, Mrs. Waechter, contends that this finding is too broad; that the subject mortgage is not sufficient to render all of her separate property liable for her husband’s debts, and that it operates only to render liable for such debts the personal property specifically described in the mortgage.
In Kovens v. Bluestone, 134 So.2d 547 (Fla.App.1961), the trial court entered summary final, judgment for the defendant wife in an action upon five promissory notes, based upon the defense that the debt evidenced by the promissory notes evidenced the debt of the husband and that the wife’s signature as an endorser was not witnessed and acknowledged as required by Article XI, Constitution of Florida. The appellate court rejected appellant’s contention that the signature of the wife as an endorser of her husband’s notes was sufficient consent in writing to meet the constitutional requirement and make her separate personal property liable for her husband’s debts. The Florida Supreme Court denied certiorari (Kovens v. Bluestone, 145 So.2d 473 [Fla.1962]), and distinguished the facts in that case from those in Springfield Co. v. Ely, supra, and Chisholm v. Coconut Grove Exchange Bank, 144 Fla. 770, 198 So. 703 (1940), in which it was held that the separate personal property of the wife specifically designated in the written instrument is liable for the specific debts of the husband, saying:
“Thus, in both Chisholm and Springfield Co., supra, the wife’s consent in writing to bind her personal property toward satisfaction of her husband’s indebtedness was manifest. It was clearly expressed and the specific personal property was identified either in or as a part of the instrument which she signed.
“The endorsement in the instant case did not constitute an express consent as did the instrument executed by the married woman in Springfield Co. No personal property of the wife was pledged and identified by this ‘instrument in writing’ as it was in both Chisholm and Springfield Co.
“In each of those two cases this Court ruled there was sufficient compliance with the provisions of Section 1, Article XI so as to subject to her husband’s debt the personal property identified in or as part of the instrument which she executed. In neither did this Court in its opinion indicate that the consent extended to her separate property other than that so identified in her written instrument.
• “In this case, the married woman’s endorsement does constitute an ‘instrument in writing’ but such instrument in-no way constitutes her consent to bind. *210 her separate property to the satisfaction of her husband’s indebtedness. None of her separate property was pledged as collateral for his note and described in the note, or in some instrument made a part thereof. Thus, the instant decision cannot be said to be in conflict with either Chisholm or Springfield Co.”
The only personal property encumbered by the mortgage held by plaintiff was the poultry then or thereafter located on the egg farm of Mrs. Waechter’s husband. The evidence before the chancellor conclusively supports the chancellor’s finding that Mrs. Waechter’s husband alone owned the poultry subject to the mortgage, and the course of business between the parties establishes beyond doubt that it was •so understood by plaintiff-appellee. The provisions of the mortgage are inadequate •to clothe the appellant wife with such indicia of ownership of the subject personalty as to subject her independent separate property to her husband's debt. It follows that appellee was precluded from obtaining a money judgment against her on .account of her husband’s debts.
In Jette v. Harbison, 158 Fla. 418, 28 So.2d 858 (1947), the trial court certified to -the Supreme Court of Florida the question of “whether or not a judgment secured by the payee on a promissory note executed jointly by the husband and wife may be •satisfied by an execution against the wife’s separate property” where it appeared that •the note was given for the husband’s debt. .Answering in the negative, the court said:
“Section 1, Article XI of the Constitution sets out in terms the requirement necessary to bind the property of a married woman to pay her husband’s debt. It cannot be done by a plain promissory note but must be done by an instrument in writing, executed according to the law respecting conveyances of married Women. No statute .can repeal or. modify this requirement. Matthews v. McCain, 125 Fla. 840, 170 So. 323.”
In Drake v. March, 66 Fla. 598, 64 So. 268 (1914), the Florida Supreme Court affirmed the trial court’s refusal to enter a deficiency decree against a married woman who had joined in the execution of a mortgage securing her husband’s debt, saying:
“A personal decree or judgment against a married woman for her husband’s debts cannot lawfully be enforced as against her separate property, real or personal, without her consent duly given as the Constitution requires; and consequently there was no error in declining to render a deficiency decree against the married woman.”
In First National Bank of Melbourne v. Berg, 153 So.2d 331 (Fla.App.1963), the sole question on appeal was whether the lower court erred in refusing to enter judgment against the wife on the separate debt of her husband pursuant to a guaranty agreement executed by the wife which did not contain any identification or description of the property to be made liable for the debt. Citing the Kovens case, the court held that the consent must be clearly expressed and “the specific property to be made liable for the husband’s debts must be identified or described.” Analyzing the decisions in the Kovens and Jette cases, supra, the court said:
“The rationale of the decisions in the foregoing cases is readily apparent when the onerous effects of a judgment, even one which ultimately may not under the Constitution be satisfied, are considered. Entry of judgment against the wife would subject her and her property to burdens and potential harassment, both legal and extra-legal, all in contravention of the language of the Constitution that ‘All property, real and personal * * * shall not be liable * * *.’
“In considering the protection afforded a married woman’s separate *211 property, the spirit of the constitutional provision and not merely a narrow construction of its wording, must be considered. The Constitution should be interpreted so as to give effect to the intent of its adopters and to attain the objects sought by them. 6 Fla.Jur., Constitutional Law §§ 11-14. To attain the objects clearly intended in the adoption of Article XI, Section 1, judgment against as well as execution upon the wife’s separate property must be barred.”
To the same effect see Pilson v. Guillery, 168 So.2d 547 (Fla.App.1964).
The final question on this appeal is whether under the rule in Edwards v. Meyer, 100 Fla. 235, 130 So. 57 (1930), the sale of the subject chattels by appellant’s husband, in which she is not shown to have participated, operated to authorize a money judgment to be entered against the appellant wife. We answer in the negative. The cited case involved a mortgage executed by husband and wife purporting to encumber land. They had in fact previously conveyed same to a third party. The mortgagee foreclosed the mortgage and obtained a personal decree against only the husband for the amount of the indebtedness. On appeal the husband contended that the personal decree entered against him was invalid. Our supreme court held, however, that he could not take advantage of his own wrongdoing to divest the equity court of jurisdiction and that the money judgment against the husband alone was in effect a deficiency judgment. There is nothing in that decision purporting to dispose of the problem presented by the case on review. It does not in any manner affect the rule in Drake v. March, supra, that a deficiency decree cannot be entered against a-married woman on account of the debts of her husband where there is no instrument incorporating the consent contemplated by Section 1, Article XI, Constitution of Florida.
The decree appealed is reversed to the extent that it purports to hold the appellant Julia M. Waechter’s separate property-liable under the note and mortgage in suit,, and the money decree entered against her is-declared to he void and of no effect.
RAWLS, C. J., and JOHNSON, J., concur.