347 So.2d 632 (1977)
In re the ESTATE OF Westley W. SILVIAN, Deceased.
No. 75-2233.
District Court of Appeal of Florida, Fourth District.
May 20, 1977.
Rehearing Denied July 22, 1977.
*633 Wallis E. Schulle, Simpson, Anstead & Brodbeck, West Palm Beach, for appellant-respondent-Frances A. Silvian.
Bernard Arbuse, Palm Beach, for appellee-petitioner-Leonore Silvian.
PER CURIAM.
The salient facts developed at the trial of the case at bar reflect that Westley W. Silvian, an attorney practicing in West Palm Beach, Florida, at the time of his death on January 6, 1973, left a will executed July 10, 1970 bequeathing "the rest and residue and remainder" of his property in equal shares to his wife, the appellant, Frances A. Silvian, and his sister, appellee, Leonore Silvian. The appellant, who was later constituted as a co-administrator, together with the appellee, began developing friction, leading to the ultimate discharge of appellant as co-administratrix. The dispute was in large measure attributable to the disagreement of the ownership of certain property and assets which appellant claimed belonged to her because of joint ownership with her husband at the time of death.
One piece of such property was Englewood, a shopping center located in Sarasota County on the west coast of Florida. The property was initially purchased by Westley Silvian and the appellant on January 26, 1966 by way of warranty deed from Sande Rocke and Mary Rocke. The purchase was financed through borrowing and through utilization of appellant's individual funds.
Subsequent loans enabled the Silvians to construct the various improvements now located on the property.
Prior to Westley Silvian's death, a one-half interest in Englewood was sold to R.W. Bartrum, III.
The record reflects that the initial warranty deed to the parties was taken in the names of:
... Westley W. Silvian and Frances A. Silvian, husband and wife, ..."
The trial judge ruled that the one-half interest in the property retained by the Silvians was not held by them as tenants by the entireties, but rather as tenants in common and accordingly awarded a one-quarter interest in the property of the estate.
Case law supports appellant's position. The language in the deed through *634 which the property was acquired ("... to Westley W. Silvian and Frances A. Silvian, husband and wife ...") was sufficient to create a tenancy by the entirety. In Matthews v. McCain, 125 Fla. 840, 170 So. 323 (1936), it was held that estate by the entireties can be created where a conveyance is made to husband and wife "without expressly specifying how they are to take." This, of course, is in the absence of an express contrary intent or language indicating that some other estate was intended. The Florida Supreme Court reiterated this common law rule in Losey v. Losey, 221 So.2d 417 (Fla. 1969). See also First National Bank of Leesburg v. Hector Supply Co., 254 So.2d 777 (Fla. 1971).
In Roger Dean Chevrolet, Inc. v. Fischer, 217 So.2d 355 (Fla. 4th DCA 1969), the Fourth District discussed the elements of a tenancy by the entirety and stated that if the necessary common law unities (interest, possession, title and time) are present, "an estate by the entireties is created even if the marital relationship is not mentioned in the deed" when the conveyance is to husband and wife.
It would be error to interpret § 689.15, Florida Statutes, as abolishing or modifying the common law tradition which recognizes the creation of a tenancy by the entirety by the conveyance of property to a husband and wife. A careful reading of the statute indicates that its purpose is to abolish any presumption of a right of survivorship in a joint tenancy unless the instrument creating the estate expressly provides for such a right. The statute expressly excludes estates by entirety from its provision.
The next issue raised relates to stocks which at the time of Westley Silvian's death on January 6, 1973, were jointly held by them as joint tenants with right of survivorship:
400 shares, Pa. P. & L., common
1000 shares, St. Joseph L. & P. Co., common
1200 shares, Cascade Natural Gas Corp. pfd.
200 shares, Armco Steel Corp.
The foregoing stocks were reissued to the appellant on January 18, 1973 through the brokerage firm of Riter, Pyne, Kendall & Hollister.
The trial judge, without comment, declared the stock to belong to the Estate of Westley Silvian, to which we disagree.
Florida specifically recognizes ownership of personalty by the entireties as reflected from § 689.15, Florida Statutes.
Even if it had been established at trial that the stocks in question had been purchased with Westley Silvian's own funds, the legal ramifications would remain completely unchanged, inasmuch as a presumption of a gift to the wife arises when title is taken by the spouses jointly which can only be overcome by a clear, positive and unequivocal showing that no gift was intended.
This principle is set forth in Witlin v. Witlin, 153 So.2d 70 (Fla. 3d DCA 1963), a case specifically involving the ownership of stocks. For precedential authority the court in Witlin relied upon Anderson v. Anderson, 153 So.2d 24 (Fla. 3d DCA 1963); Lauderdale v. Lauderdale, 96 So.2d 663 (Fla. 3d DCA 1957); Powell v. Metz, 55 So.2d 915 (Fla. 1952); and Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727 (1941). See also Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356 (1945).
Leone v. Putnam, 466 F.2d 512 (5th Cir.1972), constitutes a recent expression by the Fifth Circuit Court of Appeals upon this precise matter, the case involving specific performance of a contract for sale of stock by the husband alone where the stock was jointly held, viz:
"Under Florida law, when stock is held in the joint names of both spouses, even if purchased with the husband's own funds, an estate by the entireties is created unless there is an expressed intention to the contrary."
In having the stocks issued in their names as joint tenants with the right of survivorship, the parties clearly created an estate with survivorship characteristics in accordance *635 with the requirements of § 689.15, Florida Statutes.
Another issue presented was whether the account at Security Exchange Bank, which was opened on October 11, 1972, with a fully executed card signed by both Westley Silvian and the appellant created a right of survivorship.
The signature card reflects the account to have been opened in the names of:
"W.W. or F.A. Silvian, 223 Monterey Road, Palm Beach, Fla., as joint tenants with the right of survivorship and not as tenants in common."
During the course of the marriage this account was used as a general depository for the handling of office, business and personal affairs of both Westley Silvian and appellant.
Proceeds from the sale of appellant's individual securities and proceeds from other accounts belonging to appellant were channeled into this account, together with sums accruing from their investments.
On January 10, 1973, after the death of her husband, appellant withdrew $10,000 from this account.
The trial court concluded that because appellant had never drawn checks, or otherwise personally utilized the account, the funds on deposit belonged to Westley alone at the time of his death. The $10,000 withdrawn by appellant was therefore held to belong to the Estate.
Prior to the death of Westley W. Silvian, a savings account had been established by Westley Silvian and appellant in the Fidelity Federal Savings & Loan Association of West Palm Beach.
The signature card executed by both individuals reads in part as follows:
"... Silvian, Frances A. and Silvian, Westley W. as joint tenants with the right of survivorship and not as tenants in common ..."
Both signature cards stated that the accounts were opened by decedent and appellant as "joint tenants with the right of survivorship and not as tenants in common."
In First National Bank of Leesburg v. Hector Supply Co., 254 So.2d 777 (Fla. 1971), the court discussed the appropriate standard to be applied in personalty matters to determine the type of estate created. This standard requires the presence of the unity elements plus intent. However, the court went on to hold that where the instrument (signature card), clearly states that the tenancy is one held by the entireties and also gives the spouses individual rights to withdraw funds, it is not necessary to prove an intent to create such a tenancy. It is presumed to exist.
The next transaction involved in this appeal reflects that on December 22, 1972 the Fidelity Federal, at the request of Westley Silvian, drew a check on the Bank of Palm Beach & Trust Co., chargeable to the joint account, and made payable to the First National Bank of Riviera Beach, Florida. The check was intended to be used at a scheduled closing of property contracted to be purchased by the deceased and one Edward Gibson. It was never used for this purpose nor otherwise negotiated because of the intervening illness and subsequent death of Westley Silvian. Appellant therefore returned the check to the Fidelity Federal where it was endorsed "not used for the purpose intended" and placed in another account held by appellant and her brother, William Arkin. It was not redeposited to Account No. 26359 because this account had been closed out by appellant in the interim.
The court below ruled that the $3800 belonged to the Estate of Westley Silvian, to which we disagree.
Section 671.201(20), Florida Statutes, defines a "holder" as a "person who is in possession of ... an instrument ... drawn, issued, or endorsed to him or to his order or to bearer in blank."
Since the instrument was not made payable to the decedent or otherwise endorsed to him, he did not qualify as a "holder" under the express provisions of the code. Neither did the First National Bank of Riviera *636 Beach become a "holder" because it never obtained possession of the instrument. The estate could therefore acquire no rights in and to the $3800 because the funds never lost their character as jointly held funds.
Pertinent commentary upon this circumstance is contained in Polotsky v. Artisans Savings Bank, 7 W.W. Harr. 152, 37 Del. 142, 188 A. 63 (1936). After differentiating a banker's check from a certified check, the court had this to say:
"Where a check in the ordinary form is drawn, whether by an individual or a bank, and the same is not certified, there is no transfer or assignment of the funds from the maker's account to the credit of the payee. The check remains nothing but an order revocable at any time before acceptance."
The transaction here was of no different effect than if Westley had not become ill, but had simply changed his mind and decided not to consummate the transaction and not delivered the check to the payee. In either case, the funds remained on account with the financial institution and subject to the terms of the contract entered into upon creation of the account.
Also in dispute was the Westfran Shopping Center in Lake Park, Florida. The dispute here is over the ownership of the corporate stock.
The corporate minutes of the organizational meeting reflect that 24 shares were subscribed to by Westley Silvian, 24 shares by appellant and 2 shares by Edna Van Trepp. Edna Van Trepp resigned as a director and assigned her two shares to Westley W. Silvian and appellant as joint tenants with the right of survivorship, this being done at the specific direction of Westley Silvian.
A stock certificate for 50 shares prepared at this meeting indicated that Westley Silvian and appellant were holders of 50 shares as joint tenants with the right of survivorship. This certificate, while being impressed with the corporate seal was not signed by an appropriate corporate officer. The corresponding certificate stub and a subsequent entry in the stock transfer ledger both reflect decedent and appellant to be owners of the entire 50 shares as joint tenants with the right of survivorship. These entries were made by Mrs. Edna Van Trepp at the specific direction of decedent.
Upon these facts, the trial court held that 25 shares of the stock belonged to the Estate of Westley W. Silvian.
As to the stock, the evidence reflects that the Silvian Estate was entitled to one-half of the 50 shares of stock of Westfran, Inc. Petitioner's Exhibit 3 was the only minutes of the corporation, and signed by appellant. It showed that Westley W. Silvian was to receive 24 shares, appellant 24 shares, and Trepp 2 shares. No stock of the corporation was ever issued, and we find ample basis for the court's holding: "It is the opinion of the Court that no stock certificates were ever issued," and therefore affirmed.
Reversed in part; affirmed in part, and remanded for further proceedings consistent with this opinion.
MAGER, C.J., ALDERMAN, J., and STOKES, ROBERT G., Associate Judge, concur.